# Fitler *against* Beckley.

The consideration of a note given for goods sold may be proved by a third person, without the production of the books in which the goods were charged.

Where a bill or note is made payable at a particular place, it is not necessary that the payee should aver presentation at that place.

*Quære.* Whether, if the maker or acceptor of a note or bill, which is made payable at a bank, pays the money into the bank to the credit of the payee, and leaves it there, it will discharge him.

A sheriff, on an action against him by the payee of a note, for allowing an escape of the maker from arrest, under a *capias ad respondendum*, may set up the same defence as the maker might have done.

ERROR to the District Court for the city and county of *Philadelphia;* in which an action on the case was brought by Nathaniel Beckley and Joseph S. Shipman, trading under the firm of Beckley & Shipman, against Daniel Fitler, sheriff of the city and county of Philadelphia.

The declaration contained two counts: one for a false return, and the other for allowing one M. M'Cabe to escape from arrest, under a writ of *capias ad respondendum,* issued against him by the plaintiffs, on the following note:

*Philadelphia, Oct. 4th* 1839.

$600$\frac{33}{100}$.

Seventy days after date I promise to pay to the order of Beckley & Shipman, six hundred dollars thirty-three cents, without defalcation, for value received. Payable at the Bank of Northumberland.

(Signed)          M. M'CABE.

[Fitler v. Beckley.]

The plaintiffs then called William G. Lewis, who testified as follows:

I know M'Cabe is indebted to the plaintiffs in the sum of $600.33. I have personal knowledge of the consideration of that note, for I assisted in packing the goods for which it was given. Nathaniel Beckley and Joseph A. Shipman compose the partnership of the plaintiffs. The note was sent to Northumberland; it was not paid, but ordered back for certain reasons which I will relate. Before the maturity of that note I was at Lancaster, and was told there that Mr M'Cabe had made an assignment to Mr M'Grant, the person who kept the public house. I called upon Mr M'Grant, who took me into his house, and showed me the assignment, and an inventory of effects assigned. Among the list of creditors was the firm of Beckley & Shipman. I then went to the clerk's office, where we examined it, and found it was a legal assignment. I then made inquiry for M'Cabe; we were told he had made his escape, and gone to Harrisburg. I wrote to Messrs Beckley & Shipman what I was informed, and advised them to send the note, that I might pursue and overtake him. It was in the fore part of December 1839; can't be certain as to the time. I followed him to the city on the 30th of January last to arrest him. We went to Mr Phillips's office, procured a writ, and then went to the sheriff's office. Mr Hedges accompanied me to Commerce Street. Mr Shipley requested him to be careful and secure M'Cabe. Mr W. Gladwin, knowing the man, was sent with Mr Hedges. About 9 o'clock, Mr Hedges and Mr Gladwin came to the office. Mr Hedges said that Mr M'Cabe had been arrested, and got away from him; that he had made him acquainted with the writ; that Mr M'Cabe left the bar-room with him and the bar-keeper; that M'Cabe said he wanted to speak with Mrs. M'Guire, the landlady, about bail, and went up stairs. He thought he heard them talking, and as he stayed, he went up stairs, called him, but he was gone. He went at the request of Mr Hedges to hunt for him; he said he was liable for the debt, and wished me to solicit from the firm to get all the lenity possible, as he couldn't pay.

Cross-examined—Mr Gladwin, our porter, Mr Johnson, and others, were present at the conversation with Mr Hedges, when he said he was liable; it was repeated several times. He said he had made himself liable for the debt. I returned from Lancaster before the note came to hand. It had been sent to the Northumberland Bank for collection. Can't say when it was returned; there was no protest with it. I set down the time of the arrest at the time, and put the memorandum in my wallet.

William W. Gladwin sworn. I was requested by Beckley & Shipman to accompany the officer, Mr Hedges, because I knew M'Cabe. We took our station in the bar-room of Mr M'Guire's tavern, on the Schuylkill. Mr M'Cabe came in, when the officer

showed the writ. He wanted to edge off to the door. I called him back, and cautioned the officer that he was a slippery fellow. M'Cabe expressed a wish to go into the back room to get bail, and I told the officer, Mr Hedges, not to let him go. I remained there about ten minutes. I heard them talking together. Mr Hedges returned into the bar-room, and said he had escaped. We went up stairs and searched the house; we could not find him. Mr Hedges said he was holden for the debt. He wished me to do all I could for him, and to tell the plaintiff the whole truth.

William G. Lewis recalled—The books show how much M'Cabe is indebted to the plaintiff; it was more than the note. When M'Cabe gave the note, we gave him a receipt for the note and balanced the account. I gave a receipt to M'Cabe for the note, and balanced the account with a credit for the note. That is the note.

The plaintiffs then offered in evidence the note, to which the defendant objected; but the court admitted it, and the defendant excepted.

The Judge charged the jury that proof of the presentation of the note at the Northumberland Bank was not necessary in this case, nor was it necessary for the plaintiff to prove the sale of the goods in question, by his books of original entries. Such a sale may be proved by other means, though the books may exist.

The defendant excepted to the charge.

Errors assigned :

1. It was error to admit the note in evidence, without proof of presentation at the Bank of Northumberland.

2. It was error to charge the jury that such presentation was not necessary.

3. It was error to charge the jury, that the production of the books, which were referred to by the witness Lewis, was not necessary to establish the debt of the plaintiff.

4. It was error to charge the jury, that a sale may be proved by other means, and though the books may exist.

5. It was error not to charge the jury that there was no proof of debt due from M'Cabe to plaintiff.

6. The verdict was without evidence to support it.

C. *Fallon*, for plaintiff in error, cited 2 *Brod. & Bing.* 165, (6 E. C. L. 53); 16 *East* 110; 3 *Camp.* 247; 14 *East* 500; 2 *Dowl. & Ry.* 15; 11 *Wheat.* 174; 13 *Pet.* 144; 4 *Camp.* 200; 17 *Johns.* 254; 8 *Mass.* 480.

J. M. *Read*, (with whom was J. A. *Phillips*,) *contra*, referred to 3 *Kent's Com.* 97; 3 *Wend.* 1; 17 *Mass.* 389; 3 *Fairfield* 19, 340; 1 *Ohio Rep.* 483; 1 *Stew. Alab. Rep.* 234; 5 *Whart.* 503; *Chitt. on Bills* 360; 4 M. & S. 505; 1 *Chitt. Jr.* 20; 7 *Watts* 381.

[Fitler v. Beckley.]

The opinion of the Court was delivered by

HUSTON, J.—A *capias ad respondendum* having been issued by Beckley & Shipman against M. M'Cabe, the sheriff, or his deputy, arrested M'Cabe and allowed him to escape.

On the trial of this case, plaintiff showed the writ, proved that M'Cabe was arrested and in custody of the officer; and then to prove the amount for which M'Cabe was liable, showed and proved that M'Cabe made and delivered to the plaintiffs a note as follows:—

"$600$\frac{33}{100}$                     *Philadelphia, October* 4, 1839.

Seventy days after date I promise to pay to the order of Beckley & Shipman, Six Hundred Dollars Thirty-three Cents, without defalcation, for value received. Payable at the Bank of Northumberland.

(Signed)          M. M'CABE."

The witness who proved the note, stated that he helped to pack the goods for which the note was given, and the amount was entered in the books of Beckley & Shipman, and this note given for the amount; that witness gave M'Cabe a receipt for the note, and the books were balanced by the note. That the note had been sent to the Bank of Northumberland for collection; but that, having learned that M'Cabe had made an assignment, the note was sent for, and M'Cabe having come to this city, the writ issued and on the 30th of January 1840, the officer arrested him. The note did not appear to have been protested at Northumberland.

The note was then offered in evidence, objected to, and admitted by the court. It does not appear why the note was objected to, nor that the defendant gave any evidence.

The Judge told the jury " that proof of the presentation of the note at the Northumberland Bank was not necessary—such proof is not necessary in the case; nor was it necessary to prove the sale of the goods by the books of original entries—such sale may be proved by other means, though the books do not exist, or are not produced. The argument here was confined to the two first errors assigned—which, in fact, are the same—as the three last are in substance the same.

We find a difference of opinion existed between the courts of Common Pleas and King's Bench, on the question whether a note payable at a particular place must be presented at that place; or if not paid, whether the maker of the note, or acceptor of the bill, might be sued, without proving such presentation and demand at the place designated. The reason why it was supposed important enough to divide two courts for so long a time, was, perhaps, because such notes were drawn by individual bankers, or by persons who kept their cash at a particular banker's, and therefore made their notes payable there. The one court held it a condition precedent to a right of action; the other, that if the debtor

II. — 2 o*

had the money at the place at the time, and proved this, and brought it into court, it was equivalent to a tender, and threw the costs on the plaintiff. It was found necessary, in order to settle the law, to carry the matter to the highest tribunal, and in 2 *B. & B.* 65, (6 *Eng. Com. Law Rep.* 65), we find the case, and the reasons of the two courts for their several opinions at large. The House of Lords decided that it was necessary to present the note or bill at the place; but this did not settle the law; for Parliament enacted, very soon after, that if a note or bill was made or accepted, payable at a particular place, and *not elsewhere*, it must be demanded at that place—but payable at a particular place, it might, when due, be demanded any where, or recovered wherever suit was brought.

The question has been agitated and decided in most of our state courts, and in the Supreme Court of the United States; and in all except one, or perhaps two states, it has been settled that a demand at the place is not necessary. Many of these cases will be found in 13 *Peters* 144, 5, 7; and in 3 *Kent's Com.* 97 (*last ed.*), and following pages and note. I incline to the opinion in 13 *Peters*, as above, that if the maker or acceptor, where the money is payable at a bank, pays the money into the bank to the credit of the payee on such note or bill, and leaves it there, it will be a complete discharge, though the money should be lost by robbery of the bank or otherwise; but this case does not call for an opinion of the court on this point. It does not seem, however, that the matter, as alleged, is open in this state; for though no case is recollected where the note was payable in money at a particular place, yet we have in 7 *Watts* 380, a case where a note for $45 was payable at a furnace in castings, of a description specified at a certain time; and we held it necessary that the defendant, in order to discharge himself, must prove that he had at the time castings of the requisite description.

This would seem to settle the point in this state; but if it was open, there ought to be very strong reasons to induce this court to settle a matter differently from what has been established in all the surrounding states, and in the Supreme Court of the United States.

The other error related to the charge as to the non-production of the plaintiffs' books, to prove the sale and delivery of the goods for which M'Cabe gave the note. This point was not mentioned in the argument before this court. There is nothing in it. The witness was examined without asking for the books. When those errors were assigned, the counsel did not reflect on the difference between the seller of goods, who can only prove the sale and delivery by the production of his book of original entries, which we admit, though the entries were made by the seller, and a third person, who, acting for the owner, sells or packs the goods, and delivers them to the buyer, and then having calculated the

[Fitler v. Beckley.]

amount, or seen it in the book, in the presence of the buyer, receives a note from buyer to seller for the amount; such person can prove the note was given for consideration without the book.

Judgment affirmed.