At a Court of Oyer and Terminer held at this term, Mary E. Burrows, negro, was indicted and tried for arson in setting fire to the dwelling house of Naomi Burrows, negro, in Murderkill hundred, who was the step-mother of the prisoner, and the first witness examined, and who after stating that she owned the house and the lot on which it stood, and then lived in it, she was asked the question by the counsel for the prisoner if she had a deed for it, to which she replied that she had.
The legal title to the premises or the house burnt is not in issue in the case, but it is sufficient to *Page 75 
prove that it was occupied at the time as the dwelling house of the person whose dwelling house it is alleged to have been in the indictment. The objection is therefore overruled.
She then resumed and stated that the prisoner did not live with her, but that she came to her house that day, and she told her that she could not stay there, and she saw by her manner that she did not like what she had said to her, but she did not then leave there. After that she told her she was going to Stephen Jackson's to stay all night, and when she had fastened up the house they both went out to the road together and they there parted, she going toward Jackson's, and the prisoner another way. She staid there all night, and returned next morning when she found her house burnt down. It was then proved that the house had been broken open, set on fire and burnt down that night. A Justice of the Peace then testified that the prisoner had been arrested and brought before him on the charge of having feloniously set fire to and burnt the house, and on the hearing made a voluntary confession before him, which he reduced to writing at the time, read over to her, and which she voluntarily signed, that she and a mulatto man named John broke open the house and stole the old woman's clothes, and that he then told her to set fire to the house, but she told him she was afraid, and did not like to do it; that he then told her it would be better for her to do it, and she then took fire from the fire-place and set fire to it. And another witness testified that he afterward heard her make the same confession voluntarily to another person.
For the prisoner, however, it was proved by several witnesses who had known her from her early childhood, that she had always been of a very weak and imbecile mind and intellect, and on one occasion had confessed the stealing of seventy-five cents she was charged with which in a few minutes afterward it was discovered had not *Page 76 
been stolen at all; and although there was testimony to the contrary, as to her mental capacity and intelligence afterward produced in reply on behalf of the State, the Court left the question raised by it to the jury who returned a verdict of not guilty.