THE COMMERCIAL NATIONAL BANK OF CHICAGO vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Garnishee.

GARNISHMENT. *(1-4) Plea by resident garnishee that his debt is payable at a particular place in another state.*

EXEMPTION FROM EXECUTION. *(5, 6) Exemption of earnings; construction of statute; residence of debtor and his family.*

1. A debtor cannot be required as garnishee to pay his debt to his creditor's creditor at a time or place at which it could not be recovered from him by his own creditor.

2. In an action upon a demand payable by its terms at a particular place and not elsewhere (even if the debtor may allege and prove, in reduction of damages, that he was ready at the proper time and place to make payment, and has suffered damage from plaintiff's failure then and there to make demand), it is not necessary for plaintiff, in order to maintain the action, to show a demand at the place named.

[3. Whether a demand, payable by its terms "at the city of Chicago, Ill., and not elsewhere," would sufficiently define the place of payment to bring it within the rule governing demands payable at a particular place, *quære.*]

4. In garnishee proceedings in a court of this state against a resident thereof, where such court has obtained jurisdiction of the principal debtor, the fact that the garnishee's indebtedness to the latter is by its terms payable at a particular place in another state, where such principal debtor resides, is no defense.

5. A debtor who is married, or upon whom a family is entirely dependent for support, cannot claim as exempt from process, under ch. 280, Laws of 1861 (Tay. Stats., 1553, § 40), his earnings for the sixty days next preceding the issue of such process, where *neither* such debtor himself *nor* his family resides within this state.

6. Whether *both* the debtor and his family must reside in this state or (if not) *which* of the two must so reside, to make this exemption applicable, is not here decided.

Com'l Nat. Bank of Chicago vs. Chicago, M. & St. P. R'y Co., Garnishee.

APPEAL from the Circuit Court for *Milwaukee* County.
The plaintiff appealed from a judgment in favor of the above named railroad company, in certain proceedings in garnishment. The case is thus stated by Mr. Justice ORTON:

" On the 10th of May, 1877, the appellant commenced an action in the circuit court of Milwaukee county, upon an express contract, against S. W. Hull, J. G. Everest and W. R. Smith, and caused an attachment to issue against their property, on the ground of their nonresidence; to which action the said Everest appeared by counsel, and judgment was duly rendered therein on the 11th day of October, 1877, against all of the defendants, for $1,148.85, damages and costs. The respondent was summoned as garnishee, and answered, stating its incorporation and organization under and by virtue of the laws of this state; that it has its principal place of business at the city of Milwaukee, in this state; that the said Everest, one of the defendants in said action, is in the employ of said garnishee as passenger agent in the city of Chicago, in the state of Illinois; that he resides in that state, and had so resided for several years; that said Everest was so employed in that state under an agreement with the garnishee that he should be paid for his services in the city of Chicago, in that state, and *not elsewhere;* and that the garnishee was so indebted to said Everest in the sum of $241; and stating further that the said Everest was a married man, and had a family wholly dependent upon him for support; and said garnishee claimed on behalf of said Everest the benefit of the statute of this state exempting sixty days of such earnings, which would exceed the amount of said indebtedness. Upon this answer an issue was formed, and, upon the motion of the appellant for judgment against the garnishee, the circuit court decreed and adjudged that said motion be denied, and that said respondent be discharged from liability to the appellant upon said garnishment; from which order this appeal is taken."

The cause was submitted for the appellant on the brief of *E. Mariner*. He argued, 1. That by the amendment of the statute in 1861, the exemption of earnings was carefully lim-

ited to persons " in the state of Wisconsin;" and that the obvious policy of exemptions is to prevent inhabitants of the state becoming a burden on it (*Kneetle v. Newcomb*, 22 N. Y., 252; *Maxwell v. Reed*, 7 Wis., 582; *Bull v. Conroe*, 13 id., 233; *Russell v. Lennon*, 39 id., 574), and they should be so construed without express words of limitation.   In *Lowe v. Stringham*, 14 Wis., 222, this court intimated that another exemption statute, as it then stood, might exempt certain personalty in favor of nonresidents sojourning in this state; and the legislature thereupon, by ch. 11 of 1862, declared that the exemption should extend only to debtors having an actual residence in this state.   The provision of the statute as to earnings was evidently then regarded as, by its terms, extending only to residents, or it would have been amended at the same time.   2. That it is obvious that either the debtor or his family must reside in this state; and that the debtor must show affirmatively the fact which entitles him to claim the exemption.   Herman on Ex., 88, and cases cited in note 1; *Tuttle v. Buck*, 41 Barb., 417.   3. That the wages of a resident of Wisconsin would not be exempted in the courts of Illinois because exempted by the laws of this state (*Mineral Point R. R. Co. v. Barron*, 83 Ill., 365; see also *Newell v. Hayden*, 8 Iowa, 140); and that therefore the courts of this state will not, as matter of comity, enforce in favor of a resident of Illinois any exemption created by the laws of that state.   Besides, no such exemption is averred in the answer.

*Melbert B. Cary*, for the respondent, contended that in claims for exemption the *lex fori* must prevail, and the benefits of the exemption statutes of the state in which the action is brought must be extended to nonresidents, unless expressly limited to residents (*Lowe v. Stringham*, 14 Wis., 222; *Newell v. Hayden*, 8 Iowa, 140; *Mineral Point R. R. Co. v. Barron*, 83 Ill., 365); that the statute should be liberally construed (*Lowe v. Stringham, supra*); and that in such a construction the words "in the state of Wisconsin," in the act of 1861, should not be regarded as qualifying the words "married per-

sons," but only the words following the latter.    2. That the debt of the respondent to the principal debtor was payable only in the state of Illinois, and therefore defendant was not garnishable for it in this state.    Drake on Att., §§ 462, 474–5, and cases there cited; Sawyer v. Thompson, 4 Fost., 510.

Orton, J.   The first question of law raised by the answer is, whether the facts stated, that the garnishee is indebted to the defendant Everest for services rendered by him in the state of Illinois, under a contract by which the payment for the same was to be made in the city of Chicago in that state, *and not elsewhere*, defeats a recovery against the garnishee.

It is contended by the learned counsel of the respondent, 1st. That these facts constitute a contract of indebtedness payable *at a particular place and nowhere else*, and that therefore no recovery can be had without a demand and refusal of payment *at that place*.    2d. That these facts make the liability of the garnishee a *chose in action*, existing and to be enforced only within the state of Illinois, and beyond the reach of garnishee proceedings in the courts of this state.

The answer is perhaps defective in some important particulars, and does not give us full possession of these questions. 1st. It does not state the time *when* the indebtedness was payable.    2d. That *no* demand and refusal was ever made in the state of Illinois.    3d. That the garnishee was ready and willing to pay the indebtedness at the place named, and had suffered damage in consequence of the demand not being made at that place.

It would seem that, in order to set up the peculiar features of this contract in defense to this proceeding, the whole contract, in all its terms, should have been stated, and such other facts as would clearly show that the garnishee was not in default upon the contract, and not liable upon it to respond in this proceeding.

Treating this contract of indebtedness in analogy to a promissory note payable at a particular place, by many respectable authorities in this country, whether a demand must be made

*at that place* before suit would depend upon whether the debt was payable *on a day certain* or *on demand.* 1 Parsons on Notes and Bills, p. 429; *Wallace v. McConnell,* 13 Peters, 136; *Bank of N. C. v. Bank of Cape Fear,* 13 Iredell, 75; *Armistead v. Armisteads,* 10 Leigh, 512; *Caldwell v. Cassidy,* 8 Cow., 271; *Stowe v. Colburn,* 30 Maine, 32; *Dougherty v. Western Bank,* 13 Ga., 287.

But in either case the law seems to be well settled in this country, that a demand at the place named in the contract, bill or note, before suit, is not necessary; but that no such demand was made is matter of defense on the part of the debtor, that he had funds at the place named, and was ready to make payment on demand at that place, and has suffered damage in consequence of the failure to make such demand, but not in bar of the suit.    The doctrine of the necessity of a demand at the particular place named, upon the maker of a promissory note or the acceptor of a bill of exchange, is held more stringently in the English and some of the American courts, on account of the negotiability of the paper and as affecting the liability of indorsers.

In England, before the statute of 1 and 2 Geo. IV., c. 78, demand of payment at the place designated was a condition precedent to the right of action against the acceptor of a bill; but that statute has entirely changed the rule in England, and made a demand upon the acceptor personally sufficient in all cases, except when the contract designates the place of payment with the additional words, *and not elsewhere. Rowe v. Young,* 2 Brod. & Bing., 165; Chitty on Bills, 8th ed., ch. 5, p. 172; *Halstead v. Skelton,* 5 Adolph. & Ell., N. S., 86; Story's Bills of Ex., § 355.    But this exception was made to qualify the English statute, without which that statute would be in harmony with the rule almost universally recognized in this country, that demand at the place named before suit is not necessary. *Wolcott v. Van Santvoord,* 17 Johns., 248; *Ruggles v. Patten,* 8 Mass., 480; *Haxtun v. Bishop,* 3 Wend., 13; *Cuyler v. Stevens,* 4 id., 566; Edwards on Bills and Notes, 480–483.

The words *not elsewhere,* inserted in the contract, do not

make the payment conditional upon a demand at the place named. *U. S. Bank v. Smith*, 11 Wheat., 171; *Wallace v. McConnell*, 13 Peters, 136; *Fairchilds v. Ogdensburgh*, etc., 15 N. Y., 337; *Fitler v. Beckley*, 2 Watts & Serg., 458; Story's Bills of Ex., 356, and note 4; Edwards on Bills and Notes, 309, and authorities collated in note "A."

This court has virtually recognized this doctrine, in *Davis v. Barron*, 13 Wis., 228, and in *Howard v. Boorman*, 17 id., 460, in which last case the late eminent Mr. Justice PAINE says, in his opinion: "But it is too well settled to need examination here, that when a note is payable at a particular place, it is not essential, in maintaining an action against the maker, to show a demand at that place at the time it fell due." It is true that this language is used in relation to an alleged defect in the complaint, in not averring a demand and refusal at the designated place of payment; but the rule is broadly stated, and is sanctioned by overwhelming authority.

It is no doubt true, as claimed by the learned counsel, that the garnishee, by this proceeding, could not be made to pay this debt where or when not bound to pay it to Everest, the original creditor; but, the law being as above stated, Everest might have brought suit against the company for his services without any previous demand at or in the city of Chicago, although it was stipulated that payment should be at that place and "not elsewhere."

It seems naturally to follow, that Everest might bring such suit in the courts of Illinois or of *any other state* where jurisdiction of the company could have been obtained, and the bringing of the suit in any other state would not be impeded by this stipulation in the contract.

If the law were otherwise, the only possible effect of such a stipulation in this contract of indebtedness would be to require demand of payment in the city of Chicago before suit; but most clearly it could not determine the jurisdiction in which suit upon it could be brought, or *localize* the debt, as a *chose in action*, to the city of Chicago or state of Illinois, so as to be beyond the reach of garnishee proceedings in another

state, without the concurrence of other conditions affecting the question of jurisdiction. The principle so ably contended for by the learned counsel of the respondent, that the garnishee cannot be called upon to answer for this debt except in the courts of Illinois, because payable in the city of Chicago and not elsewhere, will be found to depend, not so much upon the place of payment as upon the residence of the parties to the contract, one or both, in the state where the place of payment named in such contract is situated.

The rule laid down in the authority cited, Drake on Attach., § 474, is as follows: "That whether the defendant reside or not in the state in which the attachment is obtained, *a non-resident* cannot be subjected to garnishment there, unless, when garnished, he have in that state property of the defendant in his hands, or be bound to pay the defendant money, or to deliver to him goods at some particular place in the state." In *Tingley v. Bateman*, 10 Mass., 343, the same rule is more clearly and fully expressed. "The summoning of a trustee is like a process *in rem*. A *chose in action* is thereby arrested and made to answer the debt of the principal. The person entitled by the contract of the supposed trustee is thus summoned by the arrest of this species of effects. These are, however, to be considered, for this purpose, *as local and as remaining at the residence of the debtor*, or person intrusted for the principal; and his rights in this respect are not to be considered as following the debtor to any place where he may be transiently found, to be there taken at the will of a third person, within a jurisdiction where neither the original creditor nor debtor resides." There are numerous authorities cited in Drake on Attachments to the same effect, and among them the case cited by the learned counsel for the respondent, of *Sawyer v. Thompson & Trustee*, 4 Foster, 510.

In that case, the trustee made special objection to the proceeding against him in the state of New Hampshire, "that he was not liable to be summoned as trustee, because he was not a resident within the state and was not personally amenable to the jurisdiction of the court;" and the court say in the opin-

ion: "Thompson, the principal defendant, and Fittspatrick, the trustee, are described as residents of Salem, in this state. In point of fact, for many years before the service of the writ, and at that time, Fittspatrick was an inhabitant and resident of the city of Boston, Massachusetts. Thompson, at and prior to the date of the service of this process, was an inhabitant of Boston also, but was, at that time, temporarily resident in the state of Connecticut. No one of the parties was ever domiciled in this state. The present is an attempt to charge the trustee for a *chose in action*, which is, in the law, regarded as *local* in reference to this action. The indebtedness attempted to be reached is between parties *resident in other jurisdictions*, who have never been *domiciled within this state*, payable and to be discharged in the foreign jurisdiction. But it is well settled that a *chose in action* is not reached by the trustee process under circumstances like the present. It is regarded as having a *situs and locality where the party resides*. The payment cannot be enforced within this jurisdiction by this process, of a debt due from a *debtor residing in another state*, and payable within that jurisdiction."

The authorities are, that although the debtor reside in another state, if the debt was made payable within the state where it is made the subject of garnishment, such nonresidence would not avail; but if the debt is payable generally, or at a particular place within another state, and the debtor reside there, then the *chose in action*, like personal property in his hands belonging to the defendant, attaches to his person and becomes *local* with him in that state, and he cannot be made to answer for such debt in another state, as trustee or garnishee; and these are the only qualifications of the principle. It is only necessary to recur to the situation and facts of this case, to show that it is entirely outside of this principle.

The trustee debtor or garnishee in this case is a corporation and resident of this state; and the defendant in the attachment, whose credit or *chose in action* is sought to be reached by the garnishment, has submitted to the jurisdiction of the

court, without question, and appeared, and suffered judgment against him in the action.

We have given more space to the consideration of these questions, because they are important in themselves and have been raised in this case by distinguished and able counsel, and they are in some respects new questions in this court.    We might, perhaps, have avoided the discussion and decision of some of these questions, by suggesting that a contract of indebtedness which, by its terms, was made payable at or in the city of Chicago, was not in fact or law payable *at a particular place,* so as to require a demand in that place, by any authorities; for the payee could not know, from the contract alone, at *what particular place in* the city of Chicago the demand or presentment should be made; but we have chosen to treat the contract in respect to the place of payment as sufficiently explicit to justify counsel in raising objection to the proceedings on that ground, and to warrant this court in giving it respectful if not adequate consideration.

The next question to be considered arises from the claim set up in the answer by the garnishee on behalf of the defendant Everest, " that he is a married man, and has a family wholly dependent upon him for support; " and that sixty days' earnings under said contract of service is exempt from these garnishee proceedings, by the laws of this state; and it must be determined almost wholly as an original question, and by construction of the statute upon that subject.

The exemption is not claimed by the laws of the state of Illinois, on the ground of his residence in that state, which, if claimed, might or might not be allowed in this state, as of right or by comity; and we shall therefore confine ourselves to the construction of our own statute.

Ch. 148, Laws of 1858, provides, " that the earnings of all *persons* for sixty days next preceding the issuing of process, etc., shall be exempt," etc.

Ch. 280, Laws of 1861, amends this statute by striking out the word " persons " and inserting in the place thereof the

words, " married persons or persons who have to provide for the entire support of a family *in the state of Wisconsin.*" We have italicised these last words of the amendment, because they are qualifying words; and the only question here is, whether they qualify or restrict the first two words of the amendment, " married persons; " for it is admitted that they do qualify and restrict the following words, " persons who have to provide for the entire support of a family," and make it necessary that either such *persons* or the family supported must be resident of this state. If " married persons " generally, wherever resident, are entitled to the exemption, then it is immaterial whether they " have to provide for the entire support of a family," or not. If, however, they have to provide for the entire support of a family, and do not reside within this state, then it may be material to inquire whether the family so supported reside in this state. The answer, although stating that Everest is a " married man and has a family wholly dependent upon him for support," and that *he* resides in the state of Illinois, fails to state the residence of *his family;* but it may be presumed that the residence of himself and family is the same, viz., the state of Illinois.

Does not the answer of the garnishee suggest the proper construction of this statute, by claiming that Everest " has a family wholly dependent upon him for support," which places him in the second class of " persons " named in the amendment, and should not the answer have stated further, that such family were " in the state of Wisconsin?" We think this amendment most clearly puts the two classes, married and unmarried persons, on the same footing, both having " to provide for the entire support of a family," implying that married persons always have to so provide for a family.

The former statute gave this exemption to all persons, generally, and wherever resident. The amendment qualifies and limits the exemption to persons, married and unmarried, " who have to provide for the entire support of a family *in the state of Wisconsin.*"

The support of the family in this state is the purpose, and

we think the main purpose, of the amendment; whether from mere benevolence and charity, as suggested in relation to a similar exemption in *Kneetle v. Newcomb*, 22 N. Y., 252, or from the utterly selfish motive of preventing the family of an indigent debtor from becoming a charge upon the " poor fund," as suggested by the learned counsel of the appellant, is quite immaterial. In *Kuntz v. Kinney*, 33 Wis., 510, Mr. Justice COLE evidently considered this the proper construction, although this distinct question was not raised in that case, and uses the following language: " It seems to us that whatever the debtor, *being a married person and having a family to support*, may earn," etc.

We therefore hold that, as neither Everest, the defendant and creditor of the garnishee, nor his family, reside in this state, the sixty days' earnings due to him from the garnishee are not exempt from the attachment.

Whether both the debtor and his family must reside in this state to secure the benefit of this exemption, or which one must have such residence, we do not decide, as in this case neither has such residence.

*By the Court.* — The order of the circuit court is reversed, with costs.

RYAN, C. J., took no part.