S. W. L. KENNEDY v. S. C. UPSHAW AND J. P. COX.

(Case No. 5227.)

1. FORGERY — EVIDENCE — WILL — CONTEMPORANEOUS FACTS. — A codicil, partially revoking a former will, was offered for probate by K., and contested by C. on the ground that it was a forgery. On the trial in the county court K. offered in evidence a deed of gift, purporting to have been executed by the testator to her children on the same day the codicil was executed. This instrument professed to give to the children of K. part of the property given by the will to a third party, and was witnessed by K. and her husband, as was also the codicil. On the trial in the district court this deed of gift was offered in evidence by C., over the objection of K., in order to show a motive for the forgery of the codicil and as a part of the same transaction. *Held*, that the paper was admissible in evidence, especially so as there was some evidence tending to show that the signature of the testator was not genuine. The jury might consider all the facts transpiring at the time the codicil was claimed to have been executed.

2. JUDGMENT — EVIDENCE, RELEVANCY OF. — Some years before the making of the contested codicil, the testator had brought a suit against K. and had agreed to a judgment in her favor for certain lands, and that certain lands should be vested in himself. K. was examined on the stand in reference to this judgment, but no predicate was laid for impeaching her testimony by introducing the judgment and showing that she had made incorrect statements in regard to it. *Held*, that the evidence was not admissible for the purpose of impeaching her evidence, even if the judgment itself was relevant. The judgment had no relevancy to the issue of forgery.

3. EVIDENCE — WILL — EXECUTION. — Statements of the testator, made three days after the alleged execution of the codicil, to the effect that he had made no change in the disposition of his property and intended to make none, were inadmissible, since they formed no part of the *res gestœ*, and since there was no question as to the mental condition of the testator. The conduct and declarations of a testator, before and after the making of a will, are admissible where the issue is upon the sanity of the testator, but not where it is upon the execution of the instrument.

4. WILL — REVOCATION — EVIDENCE. — The laws of Texas provide that no will, except a nuncupative one, can be made or revoked by mere written or verbal declarations, unless, in the case of a written declaration, it be executed with like formalities as are necessary to the execution of a valid will in the first instance. (R. S., arts. 4869–4861.) The intention of the law is to prevent fraud and perjury, and the extortion of declarations after the mind of the testator has been impaired by time. There is the same necessity for the observance of the provisions in disproving the making of a will. The legislature has provided that revocation must be done by burning, canceling, tearing or obliterating the will by the testator, or in his presence and by his direction or consent, or by a will, or codicil in writing executed with the same solemnities as a will. (R. S., art. 4861.) The statutory evidence must be had or the intended revocation fails. Following Boylan v. Meeker, 4 Dutcher, 285. (See cases *pro* and *con.* cited in the opinion.)

5. EVIDENCE — EXPERTS. — Experts can give their opinion as to the genuineness of a disputed signature upon comparing it with papers properly in evidence in the case, and papers introduced by the party affirming the genuineness of the signature and claimed by him to bear also the genuine signature of the party. The jury also can determine the genuineness of the signature from an examination of the papers before them. Following 1 Greenleaf, 578, 581; Wharton's Law of Ev., 713, and other authorities.

6. STATUTE CONSTRUED — FRAUD. — Though an adherence to the provisions of the statutes relating to frauds and perjuries may in exceptional cases prevent frauds and perjuries from being exposed, that affords no reason for a judicial construction repealing them in effect. The general result of a strict adherence to such statutes is to prevent frauds and perjury.

APPEAL from Johnson. Tried below before the Hon. Jo. Abbott.

S. C. Upshaw and John P. Cox filed their application in the county court of Hill county, on April 15, 1883, for the probate of the last will and testament of James H. Martin, wherein they alleged that James H. Martin resided in Hill county, Texas, and that he died on March 28, 1883, leaving an estate of about $8,000 or $10,000; that deceased left a will in which S. C. Upshaw and John P. Cox were appointed executors of decedent's will; that they were not disqualified to act as such executors, and that by the terms of the will they were not required to give bond; they prayed for the probate of the will and for letters testamentary. The will sought to be probated was dated February 8, 1883.

On May 25, 1883, S. W. L. Kennedy (appellant), in the county court, appeared and filed an application, alleging therein: "That it was true, as stated in the petition of S. C. Upshaw and John P. Cox, that James H. Martin left the will attached to their petition, dated February 8, 1883, but that after the 7th day of February, 1883, to wit, on March 15, 1883, J. H. Martin made, executed and published a codicil to the will, which then and there became a part of his last will and testament; that by the terms of the codicil he revoked

that part of his will appointing S. C. Upshaw and John P. Cox as his executors; the codicil was attached to and made a part of her application, wherein she alleged she is the daughter of Martin, and the only one of his children living in the state, and that she is his principal devisee under the will living in the state;" that decedent left no widow surviving him, and that she is the next of kin to him living in this state, and she averred that she was entitled to admin-istration on the estate of J. H. Martin, and that a necessity existed for such administration; she said she, Mrs. S. W. L. Kennedy (appellant), prayed that the will with the codicil thereto be admitted to probate and that she be appointed administratrix of decedent's estate, with the will annexed, and that the prayer of Upshaw and Cox for letters testamentary on decedent's estate be denied.

To the foregoing application of S. W. L. Kennedy in the county court of Hill county, Texas, on May 20, 1883, S. C. Upshaw and John P. Cox came, and by way of replication thereto averred that the instrument of writing attached to the application of S. W. L. Kennedy, purporting to be a codicil to the last will and testament of J. H. Martin, was never signed by J. H. Martin, deceased; that what purports to be the signature of J. H. Martin to that instrument of writing was not the genuine signature of said J. H. Martin, deceased; that the instrument of writing purporting to be a codicil to the last will and testament of J. H. Martin, attached to the application of S. W. L. Kennedy, was a forgery, and they prayed that her application be not granted.

In the county court, on a hearing of the above petitions, it was ordered and decreed that the will be probated, and that the codicil be rejected and its probate as a part of the will refused, and from that order of the court S. W. L. Kennedy appealed to the district court. Subsequently, and after the case had so been removed into the district court, Mrs. S. W. L. Kennedy filed her application for a change of venue.

On October 8, 1883, the district court made an order granting the application for the change of venue of the cause, and changing its venue from Hill county to Johnson county.

In the district court of Johnson county there was a trial of the cause had, and a verdict rendered finding for the establishment of the will and rejecting the codicil, and a finding against the codicil as a part of the will. Judgment on the verdict in accordance therewith.

*W. L. Booth & Son* and *Clark & Dyer*, for appellant, on the admissibility of the testator's statements, cited: Johnson *v.* Brown, 51

Tex., 65; Boylan v. Meeker, 28 N. J. (4 Dutcher), 274; Waterman v. Whitney, 11 N. Y., 157; Jackson v. Kniffen, 2 Johns., 31; 42 Ill., 376; 1 Redf. on Wills, 557–559.

On the comparison of signatures, they cited: Hanley v. Gandy, 28 Tex., 212; Adams v. Field, 2 Vt., 265.

*A. P. McKinnon* and *Brown, Ramsey & Crane,* for appellees, on the admissibility of the testator's statements, cited: Johnson v. Brown, 51 Tex., 65; Ellis v. Hardy, Moody & Robinson's Reports, N. P., vol. 1; Jarman on Wills, 5th Am. ed., vol. 1, 723.

On expert testimony, they cited: Eborn v. Zimpelman, 47 Tex., 503; Miles v. Soonin, 75 N. Y., 283; 1 Cush., 217, 411, 597; 7 Gray, 178; 39 Vt., 225; 110 Mass., 105.

Stayton, Associate Justice.— There is no question made as to the due execution of the will of James H. Martin, which was offered for probate by the appellees; but it is claimed that so much of that will as appointed Upshaw and Cox executors of the will, and trustees for Mrs. Hagler, was revoked by the codicil which is offered for probate by the appellant in connection with the will.

The appellees assert, and filed an affidavit to the effect, that the paper offered as a codicil is a forgery, and this presented the issue in the case.

On the trial in the county court the appellant offered in evidence a deed of gift, purporting to have been executed by the testator to her children on the same day the paper offered as a codicil to the will appears to have been executed. This instrument professes to convey to the children of the appellant a part of the property given by the will to Mrs. Hagler, was witnessed by the appellant and her husband, as was the codicil, and is claimed by the appellees to be a forgery.

This deed of gift was offered in evidence by the appellees, over the objection of the appellant, for the purpose of illustrating the motive which may have influenced the forgery of the codicil, and as a part of the same transaction, it appearing that the two papers came into existence at the same time and in the presence of the same persons.

This ruling is assigned as error. We are of the opinion that the court did not err in this respect, and especially so as there was some evidence tending to show that the instrument did not bear the genuine signature of the testator.

The jury might consider all the facts transpiring at the time the

codicil was claimed to have been executed, although but remotely bearing on the question of the genuineness of the codicil.

The paper was claimed by the appellant to be genuine, had been offered by her in the same case, and disposed of a part of the property to which the testator but a short time before had given a different direction by his will.

James H. Martin died March 28, 1883; the will offered for probate bore date February 8, 1883, and the codicil was of date March 15 of the same year.

On the trial the appellees offered in evidence a judgment rendered in the district court for Hill county on August 9, 1880, in a cause in which James H. Martin, Mrs. S. A. Hagler and I. P. Hagler were plaintiffs, and the appellant and her husband were defendants, in which, by agreement, certain lands were set apart to the appellant and other land to James H. Martin. To the introduction of that judgment the appellant objected upon the ground that it was irrelevant.

The appellant had been examined as a witness in reference to this judgment, and it seems stated fully all that she knew about it, and was not so examined in reference to it as to lay the predicate for impeaching her evidence by introducing the judgment for the purpose of showing that she had made any incorrect statement in reference to it.

The evidence, therefore, was not admissible for the purpose of impeaching her evidence, even if the judgment itself was relevant.

The issue was as to the forgery of the codicil, and we cannot see what relevancy the judgment in question could have to that issue.

That the testator had brought a suit against the appellant and had agreed to a judgment in her favor for certain lands, and that certain lands should be vested in himself, and that such a judgment was entered, certainly could not tend to prove that a codicil to his will, appearing to be executed several years afterwards, was a forgery.

In what right or by reason of what fact the appellant asserted title to a part of the land for which judgment was rendered in her favor does not appear; the presumption is that it was by reason of some fact which entitled her to it, and from the existence of such a judgment no inference unfavorable to the appellant could be drawn; much less would such a fact tend to prove that a codicil made to the will, to which the appellant was a witness, was a forgery.

Such evidence would not even tend to show ill-feeling on the part of the testator towards his daughter, and certainly not to show

such state of feeling towards his grandchildren, who were the bene-
ficiaries in the deed of gift, if such an inquiry could be made in a
case in which the forgery of the codicil, by which neither the appel-
lant nor her children took anything, was the issue.

This evidence was calculated to divert the mind of the jury from
the real issue in the case; was misleading, and should have been
excluded.

In the course of the trial in this case, as shown by bill of excep-
tions, the following matters occurred:

"S. C. Upshaw and John Cox, applicants for the probate of the
will of J. H. Martin, deceased, offered to prove by Geo. Orenbaum
and John P. Cox, the following facts, to wit: 'That J. H. Martin,
deceased, after his return from Wooten Wells, Robertson county,
to Hill county, in his room in the Orenbaum Hotel, on the 18th day
of March, 1883, replied in the following manner to the following
questions propounded to him by S. C. Upshaw, one of the applicants
for probate of the will: "Col. Martin, have you made any change
in your will or in the disposition of your property?" To which J.
H. Martin replied: "Upshaw, what do you mean?" To which Up-
shaw replied: "I thought you may have done so, and if you have,
I wanted to know it." To which Martin replied: "No; I have not
made any change in my will or in the disposition of my property,
and I am not going to, and am surprised that you ask me such a
question."' To which evidence the contestant S. W. L. Kennedy
objected for the following reasons:

"1. That said declarations were made subsequent to the mak-
ing of his said will and codicil, and were so remote as to form no
part of the *res gestæ* in the execution of either.

"2. That the same is hearsay testimony.

"3. That there is in this case no issue as to the mental capacity
of the testator, or of undue influence upon him by any one; there-
fore the said declarations are not admissible as evidence.

"4. Because said declarations, if made at all, were made by the
testator in disparagement of the codicil, dated March 15, 1883. All
of which said objections were overruled by the court, and the
said contestant in open court excepts, and had her bill signed, which
was done with this explanation of the court below: 'I believe the
law to be, when the issue is one of fraud or forgery, as in this case,
subsequent declarations of the testator are admissible as a circum-
stance,' etc.

"John P. Cox testified as follows (over appellant's objections):
'Martin came back to Hillsboro from Wooten Wells. I saw him

after he came back, and he told S. C. Upshaw, in my presence and in the presence of Geo. Orenbaum, that he had made no change in his business or will, and he was not going to.   This conversation in regard to change in his will took place after Martin returned from Wooten Wells, on second day after his return, I think.'

'' The testimony of the witness George Orenbaum, complained of and excepted to in above exception, is as follows:  'After Martin came back from the Wells, I think it was two or three days, Upshaw and Cox came in, and Upshaw asked Martin if he had made any change or alteration in his will.   He looked at Mr. Upshaw a second before he spoke, and remarked, "What do you mean?"   Mr. Upshaw remarked to him he (Upshaw) thought that he had made some change; if he had, he (Upshaw) wanted to know it.   Martin then said he had made no change in his will, that it was just as it was before he went to the Wells, and that he was not going to make any change.   I think these are the very words he and Martin said the second day after he came back.' "

The paper offered as a codicil to the will of the testator, Martin, bore date March 15, 1883, and bore the signatures of N. B. and S. W. L. Kennedy as subscribing witnesses, both of whom had testified that the instrument was executed by James H. Martin, on the day it bore date, at Wooten Wells, in Robinson county, Texas, in their presence, and that they, at his request, subscribed it as witnesses.

The admission of the testimony of Cox and Orenbaum above referred to is assigned as error.

We are of the opinion that the court erred in the admission of this evidence.

The declarations of the testator were made subsequently to the date of the codicil, and there is no fact connected with them which can make them *res gestæ.*

There was no question as to the mental condition of the testa˙or at the time it is claimed the codicil was executed; the sole issue was as to the forgery or no of the codicil.

The true rule as to declarations of a testator made before or after the execution of a testamentary paper, when such an issue is presented, we believe to be that summarized by Mr. Redfield from the case of Boylan *v.* Meeker (4 Dutcher, 274), thus:  "The conduct and declarations of the testator, both before and after he executed the will, are competent evidence to show his want of capacity at the time the will was executed, where the issue is upon the sanity of the testator.; but after the will is made, such conduct and dec-

larations, manifesting ignorance of the existence of the will, are not competent to show that the testator had never made the will in question. And where the execution of a will is proved in the mode required by law, the declarations of the testator, made before or after the execution of the instrument, are not competent to prove fraud, duress or forgery, or to disprove the execution — they are hearsay, merely; but such declarations, made at the time the instrument was executed, are admissible as part of the *res gestæ*. The rule upon these points is the same in the case of wills that it is in the case of deeds."

The laws of this state provide how wills may be executed, and how they may be revoked, and, except in reference to nuncupative wills, neither of these things can be done by the mere verbal or written declaration of the testator, unless in the case of a written declaration it be executed with like formalities as are made necessary to the execution of a valid will in the first instance. R. S., 4859–61.

The object of these laws is to prevent fraud and perjury, and the experience of ages bears evidence of their wisdom and of the necessity for their enforcement to avoid the evils which they were enacted to prevent.

As said by Park, J., in Provis *v.* Reed, 5 Bing., 435: "Where the legislature have taken so much care to prevent frauds in wills, and when it is considered how easily declarations may be extorted after the intellect of the testator has been impaired by time, it would be most mischievous, and a violation of all established principles, to allow such declarations to be received in evidence."

"If the provisions of the act were designed to prevent fraud and perjury in making a will, there is the same necessity for the observance of the provisions in disproving the making of a will. This appears not only from the reason of the provisions, but the legislature have, in the section on revocation, specified the solemnities which must attend a revocation. It must be done by burning, canceling, tearing, or obliterating the will by the testator, or in his presence and by his direction and consent, or by a will, or codicil in writing executed with the same solemnities as a will. This shows clearly the legislature's intent to protect wills, when executed, by the most stringent requirements of evidence of revocation. No proof of declarations of revocation made by the testator, though proved by a cloud of witnesses to have been made times without number, will avail. The statutory evidence must be had, or the intended revocation fails. If proof by any number of witnesses that

the testator said, after the execution of the will, 'I hereby revoke and declare it null and void,' will not avail to destroy the will, why should proof 'by the same number that he said, 'I never executed any will,' have that effect? Is not the liability to perjury the same in both cases? Is not the clear, actual will of the testator frustrated as much by the reception of the one evidence as the other? Should a difference in the phrase admit one declaration, and reject the other, when the effect of both is the same, to change what otherwise the law declares to be the will of the testator? The effect of the statute of frauds and wills, generally, is to prevent frauds and perjuries; but by adhering to their salutary provisions they may, and doubtless sometimes do, prevent fraud and perjury from being exposed; but that is no reason why the court should repeal them. Such always is the operation of arbitrary rules of evidence; but the experience of more than one hundred and fifty years has vindicated the policy of excluding parol evidence in such cases." Boylan v. Meeker, 4 Dutcher, 285.

The authorities are reviewed in the case just cited, and fully sustain the opinion given in that case.

The following cases sustain the rule excluding such declarations as were offered in this case: Waterman v. Whitney, 11 N. Y. (1 Kern.), 162; Jackson v. Kniffen, 2 Johns., 31; Robinson v. Hutchinson, 26 Vt., 45; Gibson v. Gibson, 24 Mo., 228; Moritz v. Brough, 16 Serg. & Rawle, 403; Smith v. Fenner, 1 Gallison, 171; Stevens v. Vancleve, 4 Wash., 265; Comstock v. Hadlyme, 8 Conn., 263; Provis v. Reed, 15 Eng. C. L. Rep., 490; Dickie v. Carter, 42 Ill., 388; Johnson v. Brown, 51 Tex., 78; Lewis v. Lewis, 2 Watts & Serg., 458.

The same rule is recognized by elementary writers. 2 Greenleaf, 690; Wharton's Law of Evidence, 1010, 1011; Abbott's Trial Evidence, 115, 124; 1 Redfield on Wills, 538, 673.

That there are cases tending to a contrary conclusion is true, and among them are the following: Davis v. Rogers, 1 Houston, 74; Den v. Vancleve, 2 South., 589; Reel v. Reel, 1 Hawks, 267; Doe dem. Ellis v. Hardy, 1 Moody & Robinson, 525, decided in 1836.

There is great doubt whether the letter received by Mrs. Hagler was shown to have been dictated by and written under the instruction of the testator; the burden of proof upon that matter was upon the person who offered the letter in evidence. It was only signed with the initials of the testator, and was assumed to have been written by Chester Martin Kennedy, whose initials only were signed to it; the evidence of the witness Orenbaum does not identify it as the

letter which he heard Chester M. Kennedy read to the testator; for the letter offered in evidence contained no statement that the testator "had willed his property to all his children and most of it to his daughter in Alabama," nor did it contain any statement as to what disposition he had made of his property, other than that he had " made a will on property in this state," and that Upshaw and Cox were appointed administrators with certain powers of appointment.

It does not appear that the person who was assumed to have written the letter might not have been called as a witness.

In view of the fact that the judgment will have to be reversed on other points, it is not necessary to pass upon the question whether the letter was shown to have been written and sent at the request of the testator with such certainty as to render its admission proper over the objection, which went only to the sufficiency of the evidence to show that the letter was in legal effect the act of the testator.

It is claimed that the letter referred to, even if shown to have been the act of the testator, was not admissible for the reason that, as were the verbal declarations proved by Cox and Orenbaum, it was but hearsay, and no part of the *res gestæ*.

No such objection was made to it in the court below, and it is not now necessary to determine whether upon the issue of forgery such written declaration would stand on the same ground as a verbal declaration.

It is urged that the court erred in permitting a number of witnesses, who qualified as experts, upon the examination of papers which were properly in evidence in the case, and of papers which the appellant had introduced as bearing the genuine signature of the testator, without objection, and of a paper which on a former trial the appellant had introduced and declared to bear the genuine signature of the testator, made at the same time as the codicil, to give their opinions as to the genuineness of the signature of the testator to the codicil.

We are of the opinion that there was no error in this ruling.

This evidence falls within the rule which permits the opinions of experts to be given, and permits the jury to determine for themselves, from an examination of the papers before them, whether the writing in controversy is genuine. The papers examined were already in the case and admitted to be genuine, or were such as the appellant was estopped to deny the genuineness of. 1 Greenleaf, 578, 581; 1 Wharton's Law of Evidence, 713; Abbott's Trial Evidence, 396; Best on Evidence, 239.

No collateral issue could arise in reference to the genuineness of the papers with which the instrument in question was compared, except as to the deed of gift; and its connection was so intimate with the codicil in question, and having been asserted by the appellant to be genuine, that it might be compared by the witnesses and by the jury.

In the case of Hanley v. Gandy, 28 Tex., 213, the question was, whether instruments, not connected with the case, and not admitted to be genuine, could be introduced for the purpose of enabling the jury, by comparing them with the instrument the genuineness of which was denied, to determine whether it was genuine or not.

The other assignments of error question the sufficiency of the evidence to sustain the verdict, but it is neither necessary nor desirable now to consider that question.

For the errors mentioned the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 19, 1885.]