## DAVIS v. WILLIAMS.

### No. 8936.

Court of Civil Appeals of Texas. Austin.

Oct. 23, 1940.

Rehearing Denied Nov. 13, 1940.

Upton, Upton & Baker, of San Angelo, for appellant.

· W. A. Wright and D. I. Durham, both of San Angelo, for appellee.

BLAIR, Justice.

Appellant, Mrs. B. E. Davis, surviving wife of Jeff D. Davis, deceased, instituted this proceeding to contest his will and to annul the order of the County Court probating it, alleging mental incapacity of testator to make it and that it was made because of undue influence practiced upon him. The jury found these two issues against appellant, and judgment was accordingly rendered for proponent; hence this appeal.

Three propositions or points complaining of asserted errors in the admission of testimony are presented. The first point presented by the first and second propositions arose as follows:

As tending to show that the testator did not have mental capacity to know and understand the nature and extent of his property, and as tending to show that he did not own the land he devised by his will, appellant offered in evidence two deeds. The first was a warranty deed dated February 14, 1903, whereby testator conveyed to his wife, appellant, the 480 acres of land described in the will "for and in consideration of the sum of Ten Hundred and Forty ($1040) Dollars, to me paid out of her own, separate estate and means," and further reciting that the conveyance was "to and for her separate individual use and benefit." The second was a deed dated January 2, 1935, whereby testator conveyed to appellant as a gift in præsenti an undivided one-half interest in the same 480 acres of land, the deed reciting that "on

the 27th day of July, 1905 the undersigned Jeff D. Davis did convey to his wife B. Lizzie Davis" the described land, and further that "the said B. Lizzie Davis has had conveyed to me an undivided one-half interest in and to said land above described as my separate individual property." In rebuttal, proponent introduced in evidence two other deeds, each dated January 2, 1935. By the first deed testator and his wife, appellant, conveyed an undivided one-half interest in the same 480 acres of land to Elizabeth Passow for a recited consideration of $10. By the second deed, Elizabeth Passow and her husband conveyed this undivided one-half interest in the same 480 acres of land to testator, the deed reciting that the conveyance was made in consideration of the payment of $10 by testator, "and for the further consideration of carrying into effect the will of B. Lizzie Davis, as expressed in her deed to Elizabeth Passow of even date herewith." And over appellant's objection, proponent's witness, Hon. W. A. Wright, was permitted to testify as follows: "On the 2d day of January, 1935, Jeff Davis and his wife and Mrs. Edward Passow came into my office in San Angelo, Texas; it may be that Ed Passow was there; I don't remember about that; Mr. Davis, in the presence of his wife and never denied by her, told me that back in 1904 he had deeded the land described in the deeds that I then wrote, and the land that is described in the application here, was deeded to Mrs. Davis by Jeff Davis; that she gave him nothing for it, and the deed was made for the purpose of protecting their property in case the widow of a man Smith, or any of their relatives, had sued, or were going to sue, and get judgment against Jeff Davis for killing Smith; * * * that they had agreed among other things they were going to divide that property; that Mrs. Davis was to have half of it as her separate property and that Jeff Davis was to have the other half as his separate property. Jeff Davis also told me that he had been advised that they couldn't make the deeds one to the other, but that they would have to deed all that property to someone else, and then let that someone else deed an undivided half interest to Jeff Davis as his separate property, and they seemed so set on that * * * they wanted it done that way, and I did it that way."

The specific objection to this testimony was and the contention here made is that the consideration recited in the 1903 deed

was contractual, and therefore the parol testimony was not admissible to show that the consideration was different from that expressed in the deed. Further, it is contended that the effect of the parol testimony was to ingraft a parol trust on and to contradict the contractual recitals in the deed that the property was conveyed to appellant as her separate property and for her individual use and benefit. And further, appellant contends that by the admission of this illegal parol evidence she was prevented from showing by the deed that testator did not own the property he attempted to devise by his will, and that in consequence she was, by the illegal testimony, deprived of the deed as competent evidence on the issue of the mental capacity of testator to know and understand the nature and extent of his property. These contentions are not sustained.

It may be observed that this is not a suit in trespass to try title to determine in whom the deeds actually vested title, but it is one contesting the will and to annul the order probating it upon the grounds of mental incapacity of testator to make it and because of undue influence practiced upon him in making the will. In such cases the rule is settled that "in determining the issues of mental capacity and undue influence, wide latitude is allowed both contestants and proponents, the circumstances of any probative value being admissible." Moos v. First State Bank, Tex.Civ.App., 60 S.W.2d 888, 891; Kennedy v. Upshaw, 64 Tex. 411; Johnson v. Brown, 51 Tex. 65; Reinhardt v. Nehring, Tex.Com.App., 291 S.W. 873. Under this rule the court did not err in admitting in evidence the four above mentioned deeds; and the oral testimony explaining the circumstances under which they were executed was admissible, not for the purpose of showing who actually had title under the deeds, but as circumstances which the jury might take into consideration in testing the knowledge and understanding of testator as to the nature and extent of his property, which was an incident the jury might consider in testing the mental capacity of testator to dispose of it by will, and being the ultimate and controlling fact issue submitted to the jury for determination. The last three mentioned deeds were each dated February 2, 1935, and by specific reference showed that they were a part of the same transaction, and were executed about 90 days prior to the execution of the will by testator on April 30, 1935. From the evidence bearing directly upon the issue of mental capacity of testator and the incidental facts relative to these deeds and the circumstances surrounding their execution, the jury could have and apparently did conclude that testator thought he owned as his separate property a one-half undivided interest in the lands which he devised by his will, and that in consequence he possessed sufficient mental capacity to execute the will.

Nor do we regard the oral testimony as varying or showing a different consideration from that recited in the deed. The oral testimony was that the recited consideration had never been paid, and the general rule is that where a deed recites a consideration paid in full, it may be shown between the parties and those having notice, that the consideration was not in fact paid. Mackay v. Tally, Tex.Civ.App., 220 S.W. 167; 14 Tex.Jur. 810, § 51.

Nor do we regard as material the question of whether the parol evidence had the effect of ingrafting a parol trust upon the land conveyed by the 1903 deed, and as contradicting its terms. In the first place, the facts and circumstances adduced by the oral testimony were merely incidental to the issue of mental capacity of testator to make the will, and the admission of such testimony is controlled by the general rule that trial courts have a wide discretion in the admission of any circumstances of probative value pursuant to the liberal rule herein above quoted.

In the second place, it is apparent that the parties to all the deeds, and particularly to the three deeds executed January 2, 1935, intended to settle and fix the respective interests of testator and appellant in the lands, and the deed of 1903 became of no further consequence. When the three 1935 deeds are considered in the light of the oral testimony concerning the purpose of their execution, which oral testimony as to these three deeds was not objected to, it is manifest that their purpose was to effectuate the wish of testator and his wife to vest in each other an undivided one-half interest in the lands as their respective separate and individual property, and from these deeds and the facts and circumstances surrounding their execution, the jury was authorized to conclude that testator thought he owned the land devised by his will, and as tending to show that testator had sufficient mental capacity to make the will. In any event, the question of title as evidenced by the deeds

**448**

could not be determined in this probate proceeding, but is to be determined in the trespass to try title suit between the parties, which the brief of appellee states is now pending.

Proponent's witness, Ira Davis, over various objections, the principal ones being that the testimony of neither the father nor the mother is admissible to prove illegitimacy of a child born in wedlock, and as being pure hearsay, was permitted to testify that his mother told him she would confess that he had been named "Davis," and that his father was Jeff Davis; and further that Edward Rue Davis, the devisee named in the will, was witness' son.

 We do not regard the testimony as being materially important to any issue in the case, because testator had the right to devise his property to whomsoever he saw fit. We are also of the view that considered as a whole the evidence was to the effect that his mother confessed to him that he was the illegitimate son of Jeff Davis, and this was admissible "as being family history." Coker v. Cooper's Estate, Tex.Civ.App., 176 S.W. 145, 146.

Nor do we sustain the contention of appellant that the court erred in admitting in evidence the opinion of nonexpert witnesses as to the mental capacity of testator at the time he executed the will, without stating the facts upon which the opinion was based; and because such testimony invaded the province of the jury; and in particular witness Willis Smith, one of the attesting witnesses to the will. This witness testified that he had been well acquainted with testator about five years next preceding the execution of the will; that he had numerous conversations with him in which they talked about horse trading, the rounding up of horses and cattle, old times, but as to the particular language used he did not remember, but detailed the exact conversation that took place at the time he was asked to and did sign the will as a witness; and that he had during the time stated observed almost daily the conduct and conversations of testator; and that from such observations and conversations he was of the opinion that testator was of sound mind when he made his will. We think the nonexpert witness detailed sufficient facts, observations and conversations to enable him to express an opinion as to the soundness of the mind of testator, and particularly under the well-settled rule that it rests largely within the discretion of the trial judge as to whether a

nonexpert witness has by conversation and observation of conduct had sufficient opportunity to testify as to the mental soundness or unsoundness of a person's mind. Keding v. Kveton, Tex.Civ.App., 254 S.W. 612; Shields v. State, 104 Tex.Cr.R. 253, 283 S.W. 844; 24 Tex.Jur., 429, §§ 44 and 45.

The judgment of the trial court is affirmed.

Affirmed.