## AT NISI PRIUS, AT PHILADELPHIA, JANUARY SITTINGS, 1797.

CORAM, M'KEAN, CHIEF JUSTICE, SHIPPEN, YEATES AND SMITH, JUSTICES.

ELIAS BOUDINOT and JOSHUA WALLACE *against* THOMAS BRADFORD.

Where a former will is attempted to be set up, from the cancelling of a latter will, all facts evincing the intention of the party therein shall be received in evidence. *Revocavit vel non*, is a question of intention.

The revocation of a will of lands since the acts of assembly of 4 Anne, cannot be by parol, but is subject to the same solemnities as a will of personal estate.

A will must be proved by two witnesses; but when there is one positive witness thereto, a combination of circumstances may supply the want of another witness to the satisfaction of a jury.

THIS was a feigned issue to try the validity of the will of William Bradford, Esq. late attorney general of the United States.

The question was, whether a certain written instrument, dated 27th April 1788, and republished on the 18th October following, was his legal will?

It was drawn by himself, and subscribed with his name, published in the presence of two witnesses, afterwards republished in the presence of the same witnesses, and was found in his desk amongst his private papers.

Another will, also in his writing, was set up in opposition thereto. This latter instrument was dated in 1763, sealed and subscribed by him, but not declared in the presence of any witnesses. Five days after he was seized with the disorder, which terminated by his death, he desired to make some alteration therein, and directed by Mr. John B. Wallace, his nephew, to bring the same to him from his desk, of which he delivered him the key. The next day, this will, except two paragraphs thereof, was read to him by his said nephew. Mr. Bradford being in a weak state, and unable to make the necessary calculations, observed that he found the making of a will was too much for him, and confused him, but he desired that a new will should be drawn by his nephew. In a short time afterwards he determined to re-publish this will, and by a codicil annexed thereto, to make an alteration in one of the devises. This codicil he subscribed and published the same day in the presence of three witnesses at first, and of another witness afterwards. That afternoon, in a delirium, he tore this will and codicil into pieces, and directed Miss Rachael Bradford, his sister, to burn the remains thereof.

The declarations of the testator in his last illness, respecting this latter will, and the foregoing circumstances attending it,

were offered in by the defendant, but were excepted to; because under the act of assembly of 4 Ann. (Prov. Laws, 31, § 6,) it is directed, that no will in writing, concerning any goods or chattels, or personal estate, shall be repealed, nor any devise therein altered by any words, or will by word of mouth only, except the same be in the life of the testator, committed to writing and then read to the testator, and proved to be so done by two or more witnesses.

But by the court: It has been held in England, that the statute of 29 Car. 2 c. 3, " of frauds and perjuries," does not extend to implied revocations by law. Carth. 81. Here more than mere declarations are attempted to be proved; and we are bound to hear the facts from the witnesses. How otherwise can the *quo animo* of the testator in the act of cancelling, be collected? All presumtive revocations may be encountered by evidence, and rebutted by other proof. The act of cancelling, is in itself equivocal. Cowp. 53. Doug. 39. Pow. on Dev. 541, 634. Suppose a will cancelled by the testator, when no one was present, shall not his subsequent declarations that he did so, for the purpose of dying intestate, be given in evidence, though he might have left a prior written will, which had probably escaped his recollection? Or suppose a friend to whom a will was entrusted, should basely destroy it; or that it was accidentally eaten by rats or other vermin, shall such destructions of the latter will, necessarily and of course set up a former will, in manifest contradiction to the declared sense of the testator? A variety of cases may certainty be put, which clearly show that the mere cancelling of a second will by mistake of the testator, design of a third person, or accident, does not of itself establish a prior will. (Vid. 3 Wils. 514.) The issue of *revocavit vel non*, like that of *devisavit vel non*, depends on the intention. Neither is this a new case in Pennsylvania; for on a question on the validity of the will of Janet Morrison, in the High Court of Errors and Appeals, (October 9th 1792,) between James Lawson, appellant and John Morrison and others, respondents, the judges merely of themselves re-examined a witness to ascertain *quo animo* a second will was cancelled, and the sentence of the court was determined by the result of their inquiries. The testimony was accordingly received.

In the course of the cause, the defendant's counsel contended that the revocation of a will might be by parol, before the statute of frauds, as the statue of wills did not direct what should be a revocation. 3 Mod. 260. 3 Burr. 1251.

Our act of assembly " concerning the probates of written and " nuncupative wills and for confirming devises of lands," adopts part of the stat. 29 Car. 2, cap. 3, but rejects other parts of it. The 19th, 20th, 21st, 22d and 23d section alone of the British statute, (3 Ruff. Stat. 386, 377,) are re-enacted with some slight variations, and made part of our code. (Prov. Laws, 31.) The 6th section of our act is copied from the 22d section of the statute, changing the expressions " three witnesses at the least," into " two or more witnesses." But this section is expressly confined to " a will in writing, concerning any goods, chattels or " personal estate." The 6th section of the statute, which contains exclusive words respecting the the revocation of a will of lands is wholly omitted. The case of Glazier's lessee v. Glazier, (4 Burr. 2512,) was determined on the particular penning of that clause. Consequently such decisions as prevailed at common law respecting the revocation of a will of lands, must govern in the present instance.

*E contra*, for the plaintiffs it was insisted, that though the provisions of the act of assembly as to the revocation of a will of lands were not equally particular and minute with the 6th section of the British statute, yet still adequate words had been made use of to show the intention of the legislature in that point.

The first section directs, that all wills of real estate proved by two witnesses, shall be valid, unless they appear to be annulled, disproved or revoked ; and in the following section it is provided, that " if any of the wills shall within seven years after the testator's death, appear to be disproved or annulled before any judge or officer having conusance thereof, or shall happen to be revoked or altered by the testator, either by a latter will or codicil in writing, duly proved as aforesaid, then and in every such case, the party aggrieved may have his remedy, &c." The law supposes that by a will being burnt, cancelled, torn or obliterated by the testator himself, or in his presence by his directions and consent, it ceases to be a will *ex vi termini*, and then prescribes that the revocation must be by a latter will or codicil in writing duly proved as aforesaid ; that is, by two witnesses in the manner before pointed out.

Here then also, are exclusive words. The legislature probably conceived, that under the terms of the 6th section of the royal charter to William Penn, the laws of England respecting property were binding here. The 6th section of the act of 1705, only guards against any improper extension of the general words of the three preceding sections, which relate to nuncupative wills. But even admitting it to be a substantive independant clause, could it be possibly

designed, that greater solemnity should be observed in in the re-
peal or alteration of a written will concerning personal estate, than
when it respected real estate, which was permanent in its nature,
and would pass from generation to generation ? Could such a dis-
tinction rest on any sound principles of justice, policy or public con-
venience?

The court on this point, fully concurred with the plaintiffs' coun-
sel, for the reasons which they had given ; and declared that though
they had no particular recollection of any such legal decision, yet
from the nature of the subject, it must have been frequently deter-
mined before in the same manner.

Mr. John B. Wallace, who received the will of 1793, in order to
draw another will, by his uncle's orders, could not remember
whether there was a revoking clause therein of other wills, but rec-
ollected most of the devises contained in it. In one of the bequests
for chartiable uses, a blank was left for the sum.

Miss Bradford was present when her brother desired that his
nephew might bring his will from the desk, but did not go with
him for it. She afterwards saw this will on the office desk, with a
devise crossed out but believed what she saw was not of her bro-
ther's hand writing, except the signature. Hence it was inferred,
that the instrument presented to her veiw, was the codicil annexed
to the will, on another sheet of paper republishing the will. When
her brother tore the paper and bid her burn the pieces thereof,
with looks of absolute frenzy, she discovered it to be the will, which
she that morning had seen in his office.

As to the testator's state of mind on the day he republished and
cancelled the will of 1793, the evidence was variant and contra-
dictory.

Dr. Benjamin Rush swore that about six o'clock in the evening
of that day, Mr. Bradford became more composed and his manner
less rapid, and he appeared sane. The testator told him, he had
attempted to make a will, but was not satisfied therewith, and that
he had destroyed it. The law should or must make a will for him
but he wished to provide for some of his relations and friends. He
accordingly at that time executed three voluntary promissory notes,
one to his two sisters for 5000l. equally to be divided between
them ; another to Miss Reed, for 1000l. and the last for 1000 dol-
lars to the witness, for charitable uses.

The plaintiffs contended, that the will of 1793 did not repeal the
will of 1788. There was no proof of any revoking clause in it. It
contained a blank for the sum in one of the bequests.

Though the usual introductory words were admitted to be inserted therein, it was only an inchoate will, and had not been executed in the presence of witnesses. A subsequent will is no revocation of a former one, unless the latter is a good and perfect will in all circumstances. 2 Woodeson. 368. 3 Mod. 258. Moreover, it cannot be established as a pre-existing will of 1793 by the testimony of two witnesses. John B. Wallace is the single witness to prove it. Miss Bradford only saw the codicil, not the original will, as subscribed by her brother. She did not accompany Wallace to the desk, where it had been deposited. As to the re-publication thereof four days before the testator's death, the weight of the testimony greatly preponderates against the sanity of the testator on that day, by an opposition of three witnesses to one at least, if not double that number.

A former will is not revoked by a subsequent will which is cancelled by the testator. 4 Burr. 2513–14. Lofft. 575–6, 299. If a latter will, either virtually or expressly revoking a former will, be destroyed, the former, if subsisting, is revived. Cowp. 92. 2 H. Bla. 516, 521, 524.

The court on the last point held, that the question of revocation under all the circumstances, depended on the intention of the party, when he cancelled the latter will. This appeared from the cases cited on the question as to the evidence; and 2 Vern. 743, Show. Parl. Cas. 149, 1 Wms. 345, and Coxe's note, *ibid*, and many other authorities.

The defendant insisted, that the will of 1788, having a revoking clause in it of all former wills, and both wills having been drawn by Mr. Bradford himself, it was reasonable to suppose that the will of 1793, had also a revoking clause in it. If this was the case, the cancelling of the latter will would not revive the will in question. Pow. on Dev. 551. The will of 1793, was a full and complete disposition of all the real and personal estate of the testator, and was materially variant from the former will, which also disposed of all his property. It could not be deemed an inchoate proceeding, because a blank was left in one of the bequests, or for the defect of subscribing witnesses. There is no necessity of having instrumental witnesses to a will, under our decisions. If this will had not been torn by the testator in a violent fever, and the pieces consumed by fire, it would readily have been susceptible of proof, from the notoriety of his hand writing.

The two wills were inconsistent and could not stand together, as they respected the same subject matter.

Respecting its proof, as a pre-existing will of 1793, independent of its re-publication, circumstances would supply a second witness. Besides Mrs. Bradford was present when the testator desired John B. Wallace to bring his will from a particular file of papers in his desk. She saw the will thus brought, in her brother's office afterwards, with a devise crossed out therein, which could not therefore be the codicil; and she recognized the pieces which she was proceeding to burn, as parts of the same will. The testator also told Dr. Rush, and Miss Stockton, he had destroyed his will; and one of the plaintiffs acknowledged it to defendant, by a letter read in evidence, dated 19th September 1795. Combining these different proofs together, they would be equivalent to one witness, and it was acknowledged that John B. Wallace was one complete witness. The law would not exact strict evidence in cases of this nature, where a will had been destroyed in a fit of insanity. Besides in chancery, Mrs. Bradford, the widow, might be compelled to answer on oath as to the will of 1793. The circumstances given in evidence by the witnesses, who deposed to the testator's insanity, on the day of the execution of his codicil, show many instances of his possessing his reason at different intervals during that day, and the directions to his executors, which he dictated on the morning thereof, are powerful proofs of a strong, retentive, distinguishing memory.

If Mr. Bradford was sane when he destroyed his will of 1793, he must have intended to die intestate, according to his expressions to Dr. Rush; and the giving of the notes to his sisters and friends is highly corroborative of this idea. On the other hand, if he was insane as that period, he could have no intention of reviving his former will of 1788 thereby; and it may justly be compared to the case of a will destroyed by accident. On a special verdict, the court cannot presume the revocation of a will, but many things may be taken into consideration by jurors to induce such a presumption, from which the judges could not make such deductions. Cowp. 53, 92. Lofft. 573.

The court in their charge, stated the evidence fully to the jury, and submitted the point of intention to their decision, on all the facts disclosed, and whether the will of 1793 was not proved to their satisfaction by two witnesses.

Verdict for the defendant.

Messrs. Ingersoll and R. Stockton, *pro quer*.
Messrs. Lewis, M. Levy, and Todd, *pro def*.

On this verdict, a rule to show the cause why a new trial should not be had, was obtained, which was argued at large on both sides, December 22d and 24th 1798, when the court discharged the rule. They observed, that a variety of evidence had been laid before the jury, to establish the instrument of 1793, as a pre-existing will, by two witnesses, of which they were the proper judges, and the court could not say they had done wrong. If this instrument had been thus proved to their satisfaction, it was of no moment as to the setting up of the will of 1788, whether Mr. William Bradford was sane or insane, when he formally re-published or destroyed the will of 1793. But if the question of sanity at those periods, had been solely before the jury, the court would have thought themselves bound, from the superior weight of evidence, to have awarded a new trial.