The opinion of the court was delivered by
Tod, J.
It seems to be conceded that in disputes respecting the insanity of a testator, or imbecility of intellect and consequent imposition, the declarations of the supposed testator have been frequently admitted in evidence. Yet it appears to me there must be some cases where parol evidence of the declarations of a testator, may not be permitted to defeat a will otherwise valid. I could wish that the plaintiff in error had thought fit to apply to the court below for new trial. Indeed I do not know, that all the evidence given on the trial is returned upon this record. The substance of it appears to be set out; and it is not our part to presume, that any thing material has been omitted.
There are three subscribing witnesses to the paper. It appears one of them lives in Ohio. His deposition was not produced by either party. The other two witnesses were examined upon the trial. On the question, whether this is a fit case for admitting parol proof against the will as written, it is a matter which to me seems to deserve very great consideration, that at the precise time of making and executing the instrument, there is uc suggestion of any importunity, compulsion, or influence, lawful or unlawful. Further, on this head, though it is said and not denied, that the paper thus executed was put into the hands of Peter Mark, the *406 scrivener who drew it, who was the brother of Mrs. Moritz, she being a devisee-therein of the old place, yet there appears no proof nor allegation, that the will thus made was out of the testator’s power at any time during his life, or that in all that time, nearly seven years, the testator attempted or expressed a wish, actually to destroy or cancel the writing, or to make a new will.
Can such a testament, made by a man of sound mind and in good health, be set aside by parol proof of these declarations of the testator, or rather, can such parol proof be permitted to go to the jury to defeat a will thus executed, is the question. The counsel for defendant in error, relies on the case of Nelson v. Oldfield, (2 Vern. 76,) decided, as he alleges, solely on the proof of declarations of tbe testatrix. And it does appear to be so. Yet it seems not an authority to be much depended on. The counsel has not shown that the case has been confirmed, or followed by any decision in this country or in England, or mentioned with approbation in any book. The point was incidental, and appears not to have been contested. The instrument had been proved in the spiritual court, and acted upon as valid. Besides, it is quite possible that the will in that case had been executed previously to the statute of frauds and perjuries; for the case of Nelson v. Oldfield, was decided only some eight or ten years after the making of that statute.
The counsel has also adverted to some strong passages in Sioinbnrn.
“A testament is originally void, or at least voidable, when the testator is compelled by fear, or circumvented by fraud, or overcome by immoderate flattery to make the same.” 3 Swinb. part 7. Sect. 1.
“A testament already made, becomes void when the testator intending to make a new testament, is forbidden or crossed, so that he cannot or dare not do ás he intended.” Ib. Sect. IS.
“The testament is void, not only when the testator is prohibited by threatenings, or hindered by fraud, but when he is overcome by importunate requests, and fraudulent persuasions, not to alter his former testament; — and this holds though there be no stronger proof of violence, or impediment offered to the testator in this case, than the assertion of the testator himself.” Ib. Sect. IS.
“ Again, if the testator after making of the testament, do affirm or protest generally, that the testament by him made was done through fear, not expressing particularly by whom he was compelled thereunto, such bare protestation does not make void the testament; but if the testator doth express by whom he was constrained, protesting that he would gladly alter the instrument, but for fear of the persons by him named; by such assertion the testament is void, at least, in the prejudice of those persons.” Ib. Sect. 2. This doctrine in Sioinburn, strong as it is to the point, is deemed not to be authority. Since his time the law has been changed; in England by the statute of frauds and perjuries, and *407 here by the act of assembly of 1705. When Swinburn lived, wills by parol were permitted, and a parol revocation of a written will, even of land, was valid. {Ib. sect. 15.) But that was not all. Not only did a bequest become void if the legatee became a heretic, or an apostate, (Ib. sect. 22,) but also, “ if the legatee did grievously defame and slander the testator, or curse him with wicked speeches.” (Ib. sect. 22.) And not only was a bequest void if the legatee should become the enemy of the testator, but void also, if the testator became an enemy of the legatee, though without any reason. “ Albeit the testator himself was the cause of the enmity, and the legatee in no fault, yet shall the legatee lose his legacy; which conclusion may seem hard, but the reason is easy, namely, because when the testator hath conceived enmity, then is he presumed to have altered and revoked his will.” (Ib. sect. 22.)
It seems to me, if the law7 then was, that a parol revocation of a will was good, and if the enmity of a testator, arising after the .execution of a will was itself a revocation, and if a man’s declarations are, and always must be, evidence, and often the only evidence of his enmity, then the medium of proof, by such declarations, as described in Swinburn, was perfectly consistent with the law of that day. But the law, as to making, changing, and revoking wills and bequests being now totally changed, Swinburn’s authority, I take it, is ended as to all these matters. It would be tedious to recite from Coke, (3 Rep. 36,) Blackstone, (2 Com. 376,) Cruise’s Digest (title Devise, cap. 5, sect. 1,) and other books, the uncertainty, litigation, frauds, perjuries, and other mischiefs under the old law permitting verbal wills, and verbal revocations, or loose and doubtful written dispositions. In England, the remedy was by the statute of frauds and perjuries, the provisions of which are immaterial to us, having a statute of our own passed for the same purposes in 1.705. This act of assembly requires all wills to be proved by two witnesses, directs that no nuncupative will shall be good for any estate worth above thirty pounds, unless proved by, two witnesses who were present, nor unless it be proved that the testator, at the time of pronouncing the same, did bid the person present, or some of them, bear witness that such was his will. And, that after six months past, after speaking the pretended testamentary words, no testimony shall be received to prove any will nuncupative, except the said testimony or the substance thereof, were committed to writing within six days after the making of the said will. And, by the sixth section, that no will in writing, concerning'any goods or chattels or personal estate, (decided to apply also to lands, 2 Yeates, 170,) shall be repealed, nor shall any clause, devise, or bequest therein be altered or changed by any ipords or will, by word of mouth only, except the same be in the lifetime of the testator commit *408 ted to writing, and after the writing thereof, read unto the testator, and allowed by him, and proved to be so done by two or more witnesses. Such being the plain law, my opinion is, that the evidence offered by the defendant below, was not competent to go to the jury. There was no ground laid for admitting the conversations of the testator, nor for admitting proof of the assertions of the wife, two months before the will was drawn, that he should make a will, and that Polly and her husband should be left nothing. It seems to me that her management of affairs indoors and out-of-doors, her high temper and control over her husband, as far as is shown by the evidence, would be but very small matter in the eye’of the law; and hardly admissible even under the old rules laid down in Swinburn, especially when there was no proof, even by the husband’s declaration, of any attempt by the woman to hinder or dissuade her husband from making a second will, or cancelling the first. Even if she had interfered throughout, I am not prepared to admit that it could make any difference in this case, not being aware of any rule of law by which influence used by a wife relative to the distribution by her husband of his property among her children, is to defeat a will made by a man of competent understanding. But, however that may be, it seems clear to me, that the evidence admitted was incompetent. Even if there was no positive law on the subject, there might perhaps be much doubt of the propriety of leaving to a jury to fix and define the true intent of a deceased person as to the disposition of his property, and almost to make a will for him, by hearing from witnesses their accounts of all that he may have said relative to his estate after his death. When men who have made, or are about to make, their wills, are questioned by expectants, and the friends of expectants, or when such men without being questioned, think fit to talk upon the subject, I take it, they do not always hold themselves bound to say the whole truth. It is something like the privilege of voting by ballot. Concealment is permitted, and deception, perhaps, sometimes practised. Such persons have many reasons to wish for quiet, and when disappointments are to happen, the law seems to put it in the power of a testator to escape, and to avoid bearing a part in the scuffles about dividing his property. And men who care for no concealment, may often really intend to make a will in a particular way, or to alter one already made, and after honestly declaring such intentions, may change their minds. My opinion is, that the judgment be reversed.
Duncan, J., concurred.
Huston, J., concurred.
Gibson, C. J.
The inquiry was not whether the will was recorded, but whether one existed; and the argument that the declarations of the testator were inadmissible to prove a parol revocation, falls *409 with the assumption of the fact that they were offered with that view. Nor is the testator to be viewed as. a witness, but as a earty; and therefore all that might otherwise be objected, on the ground that his declarations were made without the sanction of an oath, or in the absence of the party to be affected, or without an opportunity to cross-examine, is beside the purpose of the argument. On the same grounds and with equal force, might an objection be urged against the admissions of a party in any case; and the danger to be apprehended from tampering with him, 'or from the use of loose and unguarded expressions, or from perjury in fabricating declarations that were never made, would be equally as great. Such considerations are to be referred to no general rule whatever, but to the discrimination of the jury under the particular circumstances of the case. A will is ambulatory till the testator’s death, when an interest for the first time vests in the legatees; and, according to the strictest rules of evidence, his declarations made when he was the only party in interest, and therefore the only party who could be prejudiced fay misrepresenting the fact, and when a motive for falsehood cannot be imagined,, ought to be received as evidence against a party claiming under him. It is for this reason that the admissions of a party are competent." But were this otherwise, yet necessity is always a sufficient reason for dispensing with strict rules of evidence; of which the instance of á wife who is admitted to testify against her husband in a prosecution for an injury to her person, is the most apposite. Is the same necessity not to be found in cases like the present? None can be more urgent than that which dictated the admission of the evidence in Nelson v. Oldfield, where the testatrix had been forced, not only to make her will in a particular way, but also to swear that she would not revoke'it. In such case it is idle to talk of the power of cancellation, or any other act which implies an admission that the instrument was originally valid. Ever after compulsion has ceased, the party may from habitual procrastination defer the act of cancellation till it is too late, just as others are prevented from making a testament, who never intended to die intestate. In such a case, if the declarations of the testator are to go for nothing, the injury is without a remedy. On the other hand, if they are admitted they go to the jury subject to the supervising control of the court, which is a sufficient guard against abuse. ' It seems 'to me therefore the evidence was properly admitted.
Rogers, J., concurred with the Chief Justice.
Judgment reversed, and a venire facias de novo awarded.