Rockingham, }
June, 1895. }

LANE, *Ex'x*, *v.* HILL, *Ap't.*

A subsequent will which cannot be produced does not revoke a former one
    offered for probate unless its contents can be ascertained and are inconsist-
    ent with the earlier instrument, or it is shown to have contained a clause
    of revocation.
Upon an appeal from the probate of a will, an issue for the jury, that the
    will allowed was not the last will of the testator, is immaterial if it sub-
    mits the mere question whether the testator executed a later will than that
    propounded; and is improperly framed if intended to submit the question
    of revocation.
The objection, that the evidence produced by the opposite party is not suffi-
    cient to warrant a verdict in his favor, is waived if not taken until after
    the case has been submitted to the jury.
When the due execution of a will has been shown and its non-production
    accounted for, evidence of the declarations of the testator is admissible to
    corroborate direct testimony as to its execution, prove its contents, and es-
    tablish the revocation of an earlier will offered for probate.
If a will duly executed is proved to have been in the testator's possession
    and cannot be found at his decease, the presumption is that he destroyed
    it, *animo revocandi;* but if it is not shown in his possession, the failure to
    find it after his death furnishes no ground for such presumption.

An earlier will is not revived, upon the destruction of a later one by which it was expressly or impliedly revoked, unless such appears to have been the intention of the testator.

APPEAL, from the probate of the will of George W. Lane. Three issues were presented at the trial: (1) That the will probated and allowed by the probate court was not the last will and testament of George W. Lane; (2) that the will was not signed by George W. Lane, nor by any person in his presence and by his express direction; (3) that the instrument was not attested and subscribed in his presence and at his request by three credible witnesses. On the first issue the jury were unable to agree. On the second and third issues they returned a verdict in favor of the plaintiff.

The testimony of Jennie Felch, called by the defendant, tended to show that subsequently to the date of the will offered for probate the testator executed a will to which she was one witness, and her deceased husband, Fred R. Felch, by whom it was written, was a second. There was a third witness whose name she was unable to state. The evidence did not disclose the name of the third witness, the contents of the second will, its existence at the time of the testator's decease, or whether it revoked the first will.

The defendant offered to show, and excepted to the exclusion of, the testator's declarations, made a few months before his death, that he had made a will, written by Fred R. Felch, in which he had provided well for his wife, and had given the farm and some money to his daughter. The will offered for probate gave all the testator's property to his wife, and was written by Jesse B. Pattee.

The plaintiff moved for judgment on the verdict, establishing the will on the second and third issues, on the grounds (1) that all the evidence introduced and offered by the defendant to prove the existence and due execution of a second will revoking the first was insufficient in law for that purpose; and (2) if a second will was made which revoked the first, its existence at the date of the testator's death must be shown.

*Greenleaf K. Bartlett* and *Henry B. Atherton*, for the plaintiff.

*Eastman, Young & O'Neill*, for the defendant.

PARSONS, J. Three issues were submitted to the jury. Upon two the jury found for the plaintiff, in substance, that the will was duly executed by the testator, George W. Lane. To this verdict and the evidence upon which it is founded, there is no

exception. Upon the first issue, that the will probated and al-
lowed by the probate court was not the last will and testament
of George W. Lane, the jury were unable to agree. The plain-
tiff moves for judgment on the ground that all evidence intro-
duced and offered by the defendant to prove this issue was in-
sufficient in law for that purpose. If the first issue is understood
as submitting to the jury for their finding merely the question
whether after the execution of the will propounded the testator
had executed another will, the issue is an immaterial one.

" A subsequent will does not revoke a former one unless it
contains a clause of revocation, or is inconsistent with it. And
where it is inconsistent with the former will in some of its pro-
visions merely, it is only a revocation *pro tanto*. *Brant* v. *Wilson*,
8 Cow. 56. Where a subsequent will is made, and there is no proof
that it contained any clause revoking a former will, as in cases
where the contents of the last will cannot be ascertained, it is not
a revocation of the former will. This was decided by the court of
king's bench, in England, more than one hundred and fifty years
since, in the case of *Hutchins* v. *Basset*, Comb. 90,— *S. C.*, 3 Mod.
203 ; and that decision was subsequently affirmed, upon a writ
of error, in the House of Lords. See *Hungerford* v. *Nosworthy*,
Show. Cas. Parl. 146. In the subsequent case of *Harwood* v.
*Goodright*, Cowp. 87, which came before the court of king's
bench in 1774, it was held that a former will was not revoked
by a subsequent one, the contents of which could not be ascer-
tained ; although it was found by a special verdict that the dis-
position which the testator made of his property by the last will
was different from that made by the first will, but in what par-
ticulars the jurors could not ascertain. This case was also car-
ried to the House of Lords upon a writ of error ; and the judg-
ment of the court of king's bench was affirmed. As these two
decisions of the court of *dernier ressort* in England were previous
to the Revolution, they conclusively settle the law on the subject
here." *Nelson* v. *McGiffert*, 3 Barb. Ch. 158, 164, 165 ; 1 Red.
Wills (1st ed.) 350 ; 1 Jar. Wills 338 (*172); *Pickens* v. *Davis*,
134 Mass. 252.

A verdict of the jury, therefore, establishing as a fact that the
testator executed another will after the execution of the will
from whose probate the appeal was taken, without more, would
not defeat the executor's right to a judgment establishing this
will. She would be, therefore, equally entitled to such judgment
where no verdict has been rendered. Her right to a judgment
would not be defeated by the failure of the jury to render any
verdict when a verdict against her would not have that effect.

On an appeal from the probate court, " if any fact material to
the cause be disputed, the court may direct an issue proper to
try such fact to be framed, and ascertain the same by the verdict

of a jury." P. S., *c.* 200, *s.* 11. The first issue in this case is objectionable in that it does not clearly submit some particular question of fact to the jury. The judgment to be rendered is whether the instrument propounded is or is not the last will and testament of the deceased. The issue framed in this case apparently submits the whole question to the jury, whereas the issue should require the determination of some fact, the existence or non-existence of which is material upon the legal question whether the disputed paper is or is not the last will of the deceased. Rules of Court, *p.* 31,— 56 N. H. 601.

In making the issue, the executors move that the will be proved and allowed as and for the last will and testament, etc. This motion is addressed to the court, not the jury. The objecting party then sets up any facts which are the grounds of his claim that the instrument is not the last will, etc. If the facts are material, that is, facts from which if established it would follow as matter of law that the instrument is not the testator's last will, an issue is awarded him and judgment rendered as the fact is found. But the whole question is not properly to be thrown to the jury in this manner. *Dudley* v. *Wardner,* 41 Vt. 59. The parties in the present case, however, appear to have treated the issue as if it had been that since the execution of this instrument the testator duly executed another will, by the terms of which the first was revoked; or, more briefly, that the will was revoked by the testator in his lifetime. Upon this issue no will was produced; there was evidence, however, tending to show the execution of another will, but no evidence was admitted in the case of the contents of the second will. There being no evidence in the case that Lane had executed a subsequent will revoking in terms or by its inconsistent provisions the will whose validity was litigated, there was nothing to submit to the jury upon the first issue, considering it as the parties appear to have treated it. Upon motion of the plaintiff, made before the case was submitted to the jury, that issue would have been withdrawn; but having suffered the case to go to the jury upon this issue without objection, her motion comes too late after the failure to find a verdict. *Baldwin* v. *Wentworth,* 67 N. H. 408; *Haydock* v. *Salvage,* 67 N. H. 598. Had the motion been seasonably made and the defendant's attention thereby called to the lack of evidence, it might have been that justice would have rendered it necessary that the case should have been reopened to allow the defendant to supply any missing testimony. However that may be, the plaintiff allowed the case to be submitted to the jury without objection to the want of evidence; and the jury having rendered no verdict, the question of revocation when the issue is properly framed is still undetermined, and there can be no judgment either way until the question of fact is settled.

There is no occasion for the defendant's motion for a new trial. Until the issue is decided, she is entitled to as many trials as may be necessary, assuming that upon a new trial sufficient evidence will be offered to warrant a verdict by the jury.

Evidence of declarations of the testator that he had made a second will, and as to its contents, was offered and excluded. The plaintiff claims that all the evidence introduced and offered by the defendant to prove the existence and due execution of a will revoking the first will was insufficient for that purpose. If it were conceded that the case contains all the evidence that can be adduced upon these questions, we might, treating the statement as an agreed case, pass thereon; but in view of the fact that the defendant claims to have additional evidence to introduce upon a subsequent trial, it does not seem advisable to consider this question until the evidence is all before us.

The question of the admissibility of the testator's declarations that he had made a second will, and as to its contents, will arise at another trial, and we have considered it. The testimony of Mrs. Felch, as stated in the case, "tended to show the execution of a will by the testator of a subsequent date to the one offered for probate, to which she was one witness, her husband, Fred R. Felch, now deceased, who wrote the will, was a second, and there was a third witness whom she did not remember." This evidence would seem to be sufficient, *prima facie* at least, for the submission to the jury of the question whether the deceased did in fact execute a second will, and is so held in *Dan* v. *Brown*, 4 Cow. 483; but in view of the suggestion of counsel as to newly discovered evidence, this question may not arise upon another trial. Evidence having been given of the due execution of a will and its loss, one question is whether declarations of the testator are admissible to show the contents of the will. The loss of the will being shown, its contents may be shown by parol in the same way as proof of the contents of any other lost instrument. *Brown* v. *Brown*, 8 E. & B. 875,— 92 Eng. C. L., and note *p.* 889. In like manner, in order to establish the revocation of a prior will which has continued in existence, proof of the contents of a subsequent will which has been lost, destroyed, or canceled, is admissible. *Ibid*, and authorities cited.

The question whether declarations of the testator are admissible to prove the contents of a lost will has been most thoroughly examined in the case of *Sugden* v. *St. Leonards*, 1 L. R. P. D. 154, which was approved in *Pickens* v. *Davis*, 134 Mass. 252, and the conclusion reached was in favor of their admissibility. In the first case, in the discussion it is said by *Jessel*, M. R. (*pp.* 240–242) : "Now, it might well have been that our law, like the law of some other countries, should have admitted as evidence the declarations of persons who are dead in all cases where they

were made under circumstances in which such evidence ought properly to have been admitted, that is, where the person who made them had no interest to the contrary, and where they were made before the commencement of the litigation. That is not, however, our law. As a rule the declarations, whether in writing or oral, made by deceased persons, are not admissible in evidence at all. But so inconvenient was the law upon this subject, so frequently has it shut out the only obtainable evidence, so frequently would it have caused a most crying and intolerable injustice, that a large number of exceptions have been made to the general rule. . . . The exceptions are generally considered to be three principal and three subordinate exceptions. . . . First, there is an exception of a declaration accompanying an act; secondly, of a declaration against interest; and, thirdly, of a declaration made by a person in the course of business, one which it was his duty to make. Those are three large exceptions. There are then some smaller exceptions; the first is the proof of matters of public and general interest, one might say of *quasi* historical interest, not actually historical, where we admit the declarations of persons who may from their position be fairly presumed to have had knowledge on the subject. In the next place, we admit evidence which is in its nature very weak indeed, that is in matters of pedigree, where we admit declarations of deceased members of a family, on its being shewn that the persons were members of the family. Now I take it the principle which underlies all these exceptions is the same. In the first place, the case must be one in which it is difficult to obtain other evidence, for no doubt the ground for admitting the exceptions was that very difficulty. In the next place, the declarant must be disinterested ; that is, disinterested in the sense that the declaration was not made in favour of his interest. And, thirdly, the declaration must be made before dispute or litigation, so that it was made without bias on account of the existence of a dispute or litigation which the declarant might be supposed to favour. Lastly, and this appears to me one of the strongest reasons for admitting it, the declarant must have had peculiar means of knowledge not possessed in ordinary cases. Now, all these reasons exist in testifying both as to matters of public and general interest, and as to matters of pedigree, and some, if not all of them, exist in the other cases to which I have referred. They all exist in the case of a testator declaring the contents of his will. Of course, as in the case of pedigree, the courts must be cautious in admitting such evidence. From its very nature it is evidence not open to the test of cross-examination, it is very often produced at second or third hand, and it is therefore particularly liable to lose something of its colour in the course of transmission. It is so easily and so frequently fabricated that

all courts which have to dispose of such cases must be especially on their guard. But that goes only to the question of the weight to be attributed to the evidence when admitted, it does not go to the question of admitting the evidence itself; and I must say it appears to me that, having regard to the reasons and principles which have induced the tribunals of this country to admit exceptions in the other cases to which I have referred, we should be equally justified and equally bound to admit it in this case. When I say equally, perhaps I state the case a little too low, because if there is any case in the world in which it is incumbent upon a tribunal not to grant a premium for fraud or wrong; not to hold out to the world that any man who is able to get hold of the will of a testator which may disappoint him of his expectations, just or unjust, if he once destroys it, shall be able to acquire the property either for himself or for those whom he wishes to benefit,—I say if ever there was such a case it is the case of a lost will. The court should be anxious, not narrowly to restrict the rules of evidence, which were made for the purpose of furthering truth and justice, but, guided by those great principles which have guided other tribunals in other countries in admitting this kind of evidence generally, to admit it at all events in the special case which we have under consideration." In this case, in 1876, the written and oral declarations made by a testator, both before and after the execution of his will, the will being lost, were after extended discussion and the greatest consideration held admissible as secondary evidence of its contents. The arguments advanced by *Jessel*, M. R., and *Cockburn*, C. J. (*pp.* 224–229), have not been answered, and they seem to us unanswerable.

The objection to the evidence is that it is hearsay, not open to cross-examination, and not given under the sanction of an oath. The declaration, however, is that of a person now deceased, having the means of knowledge without interest to misrepresent, and is the best evidence of which the case is capable. *Betts* v. *Jackson*, 6 Wend. 173. It is difficult to see on what ground the reason of the admission of the evidence of declarations of deceased persons in cases of disputed boundary, which is put upon the ground that it is the best evidence of which the case is capable, does not apply to cases like the present. *Lawrence* v. *Tennant*, 64 N. H. 532; *Nutter* v. *Tucker*, 67 N. H. 185. To admit the declaration of a deceased person in one class of cases because it is the best evidence of which the case is capable, permitting the jury to judge of the interest of the declarant as bearing upon the weight of his testimony (*Lawrence* v. *Tennant, supra*), and to exclude the declaration of the deceased person in this case, would be to establish a particular rule of evidence for a special class of cases, for which no good reason can be given. Our conclusion

is that the evidence of the deceased's declarations as to the contents of the last will is admissible to show its contents, and, if the will is thereby found inconsistent with the earlier will, to show the revocation of the prior will. *Gage* v. *Gage*, 12 N. H. 371, 381.

Whether the declarations of a testator are admissible to prove the due execution of his will is another and different question. The great weight of authority is to the effect that such declarations are not of themselves sufficient. *Hoitt* v. *Hoitt*, 63 N. H. 475, 499, 500, and cases cited; 1 Red. Wills 555; 1 Jar. Wills 245. The reason of the rule is that " the exercise of the testamentary power being conditional on the observance of the formalities prescribed by statute, a man cannot, by his own mere assertion, establish that he has fulfilled the conditions necessary to the exercise of the right." *Sugden* v. *St. Leonards, supra.* " Mere vague declarations of testators that they have made their wills are not always to be implicitly relied on. . . . In common parlance, a man may well say that he has made a will when he has written a testamentary paper, though unfinished." 1 Jar. Wills 245, 246. Upon the authorities, it is clear that the express revocation of a will, or the execution of another will revoking the former, cannot be shown by declarations of the testator alone. That, however, is not the question in this case, which is whether, when there is evidence competent for the jury upon the question of due execution and from which they may properly find such execution, the inference of fact upon this issue from the facts already admitted can be strengthened by evidence of declarations of the testator, verbal or written, or of his conduct and acts tending to establish the point in issue. All the considerations of necessity that have been suggested with reference to proof of the contents of a lost will may apply with equal force to the admission of this evidence. If the issue were whether a will duly executed were a forged or genuine will, and the evidence were evenly balanced, would not evidence that the supposed will remained in the testator's possession, that he was seen to examine it, that he spoke of it as his will, be of the highest moral convincing force in favor of the will? No logical reason appears why such should not be legal evidence. The admission of such evidence should be confined to the corroboration of direct evidence of execution, for the reason that otherwise the evidence is but proof of the testator's understanding, and the testator's understanding cannot take the place of the formalities prescribed by law. *Hoitt* v. *Hoitt, supra.* Upon these considerations we think the testator's statement that he had made a will which was written by Fred R. Felch was admissible in corroboration of the testimony of Mrs. Felch to the same effect, and should have been received. The plaintiff also moves for judgment on

the ground that the existence of the second will at the testator's death is not shown, even if the proof were sufficient to establish its execution. No question such as is raised by this motion appears to have been submitted to the jury unless it is embraced in the view the parties appear to have taken of the first issue. Whether the will was in existence at the testator's death, or not, is a question of fact. If that fact is one included in the issue whether the first will was revoked, the motion comes too late, on the grounds heretofore stated. It seems well settled that where a will is proved to have been once duly executed, to have remained afterward in the testator's possession, or was last heard of in his custody, but at his death cannot be found, the presumption is that it was destroyed by him *animo revocandi*. 2 Gr. Ev., *s.* 681; 1 Red. Wills, *p.* 329, *s.* 48; *Betts* v. *Jackson*, 6 Wend. 173; *Brown* v. *Brown*, 8 E. & B. 875, and authorities in note, 92 Eng. C. L. 889. If the will is not shown into the testator's possession, the failure to find it after his death furnishes no ground for a presumption of revocation. 1 Gr. Ev., *s.* 681. Whether the second will was destroyed is important so far as the probate of the present will is concerned, only if the effect of such cancellation of the second will would be to revive the first. Although upon this point the authorities are in conflict, the better opinion seems to be that, even in the absence of statute provisions upon the subject, such destruction would not have that effect without evidence that such was the intention of the testator, especially if the later will contained a clause of revocation (*Pickens* v. *Davis*, 134 Mass. 252; *Cheever* v. *North*, 106 Mich. 390; 2 Gr. Ev., *s.* 683), which, in view of the fact that there is no evidence upon these points, is as far as it is necessary for us to go at present. Whether as a matter of convenience and for the purpose of settling the entire controversy by one trial, the defendant, if she relies upon the second will, ought not to proceed in the probate court for probate of the second will, so that upon appeal to this court the whole controversy could be passed upon by one jury, is a matter for the consideration of counsel, and which, if they do not agree, can be determined at the trial term.

*Case discharged.*

WALLACE, J., did not sit: the others concurred.