Though testatrix was 77 years old at her death, and for six months had been suffering from cancer of the face, which had somewhat enfeebled her, she had testamentary capacity, where it appeared that she had not been confined to her bed; that she had a strong will, and good business capacity; and, from the testimony of her physician and the attesting witnesses that she suffered no pain, joked with them, and talked intelligently.

2. SAME—UNDUE INFLUENCE—DECLARATIONS OF TESTATRIX.

Where testatrix had testamentary capacity, and probate of the will is contested on the ground of undue influence, declarations of testatrix, prior to the execution of the will, that she intended to give contestant (who was not a legatee) a share in her estate, and that proponents had been trying to compel her to make a will, are inadmissible.

3. SAME.

Evidence that an attorney of well-known integrity drew up in the presence of testatrix the will which disinherited contestant, and that testatrix, who was able to read, signed it, and called on the attorney and another to witness it, and stated that it was her last will, negatives the inference of undue influence arising from prior declarations of testatrix that she intended to give contestant a share in her estate, and that proponents were trying to compel her to make a will.

Application for the probate of the will of Mary Metcalf, deceased. Granted.

Ralph B. Laning and James H. Waring, for proponent.
Henry Donnelly, for contestant.

DAVIE, S.    Mary Metcalf died on the 31st day of October, 1895, at the age of 77 years, leaving her surviving no husband, but three sons and three daughters, her only heirs and next of kin. She possessed at the time of her death personal estate of the value of $2,500. By the provisions of her will, which was executed on the 2d day of September, 1895, she bequeathed to her daughter Mrs. Van the sum of $300, as compensation for services rendered by Mrs. Van for the testatrix. The residue of her estate she bequeathed equally to all of her children except the contestant, Levi D. Metcalf, who is not a legatee.

A methodical examination of the propositions involved in this contest leads, first, to a consideration of the mental condition of the testatrix at the time of the execution of the will. Did she possess testamentary capacity within the meaning of the authorities defining the grade of mental ability requisite to execute a will? Testatrix died from cancer of the face, which began to develop about six months prior to her demise. At the time of the execution of the will she was somewhat enfeebled physically in consequence of the progress of the disease. She was not, however, confined to her bed, but was able, with assistance, to move about the house. She was a woman of strong will, ordinarily intelligent, and of fair business capacity. Within a day or two after the execution of the will she was attended by Dr. Bixbee, who had known her for many years. The disability imposed upon the doctor by section 834 of the Code

was properly waived, and he was examined quite fully as to her physical and mental condition. He said, quoting from his testimony:

"I asked her if it [the cancer] pained her. She said, 'No,' but the weight and inconvenience of it bothered her, and made her nervous, and she wanted to get it out of the way; wanted me to take it off. I objected to it, because I did not think it advisable. Her general health seemed quite fair, although she was weaker than when I had seen her before. She did not complain of pain, or any distressing symptoms, but she talked about as well as usual. She talked intelligently, and about as she usually did when I had seen her previously. She was naturally inclined to joke, and she would get her jokes off as she used to years ago."

He further testified that he conversed with her so as to determine her mental condition, and that she was of sound mind; that he saw nothing to indicate anything to the contrary; that she told him that "she had got her will made all right. If that thing was going to kill her, she was ready." The attesting witnesses testified distinctly that she was of sound mind. The other witnesses detail conversations with her shortly before and after the making of the will, and, while they speak of her enfeebled physical condition, they say her conversation was intelligent.

The courts have held that there is no presumption against the validity of a will because made by a person of advanced age, nor can incapacity to make a will be inferred from an enfeebled condition of body and mind. Horn v. Pullman, 72 N. Y. 269. It has been asserted as a general proposition that one capable of comprehending the condition of his property and his relations to those who are the natural objects of his bounty, and able to collect and retain in his mind without prompting the elements of his business, possesses testamentary capacity. Van Guysling v. Van Kuren, 35 N. Y. 70; In re Carver's Estate, 3 Misc. Rep. 573, 23 N. Y. Supp. 753. An application of these authorities to the evidence relating to the mental condition of the testatrix absolutely refutes the allegation of lack of testamentary capacity, so the remaining questions in this case must be determined having the fact in view that the testatrix at the time of the making of the will was of sound and disposing mind.

It is, however, urged with considerable earnestness on the part of the contestant that the execution of the will in its present form was the result of undue influence, or of ignorance on the part of the testatrix as to its contents. The circumstances upon which this claim is predicated are that by the provisions of the will the elder son is absolutely disinherited without any substantial reason appearing therefor, and that shortly prior, as well as subsequent, to the execution of the will, the declarations of the testatrix in regard to her testamentary intentions and in regard to the disposition she had made of her estate are contradictory to the provisions of the will. The testatrix had the undoubted right to make such a disposition of her estate as she saw fit. It is unnecessary to speculate as to her motives if it satisfactorily appears that the will represents her testamentary wishes. No presumption against the genuineness of this will arises from the fact that its terms are harsh or unjust. In re Tracy's Will, 11 N. Y. St. Rep. 103; Van Pelt v. Van Pelt, 30

Barb. 134; La Bau v. Vanderbilt, 3 Redf. Sur. 384; In re Jones, 5 Misc. Rep. 200, 25 N. Y. Supp. 109.   But what effect is to be given to her declarations?   The witness Chapman testified to having heard a conversation between the contestant and testatrix at her residence in the month of August, 1895, in which she said:

"Levi, I want you to take a chair, and come up here to my bed. I wish to talk with you. They have been harassing me to make a will, and if I do so I suppose I will have to do it soon. I have a new buggy here, and I have given it to Jane. She has cared for me. I have been with her, and she has waited on me, and done lots that the other girls couldn't do, and they haven't been here. I want to pay her, or leave enough to her to make it satisfactory; and the balance I want equally divided among all of you children; and, if you properly take care of what is left of your father's estate and this, it will buy you a good home."

The testimony of this witness was corroborated by his wife and the witness Ada Grant, who each heard the same conversation.   The witness Amelia Metcalf, the wife of the contestant, testified that she visited the testatrix on the 4th day of October, 1895, and in detailing a conversation between them says:

"She [testatrix] said: 'They have been hounding me about making a will, and so I made it the best I could. You tell Levi for me that what he can save out of his father's share and what he has out of mine will be something toward buying him a home.' She told me to tell him that his share was on interest, and good interest. She said, outside of Mrs. Van,—she had given the buggy to Mrs. Van, and she wanted her to have pay for her trouble,—outside of that she had her property divided equally, or wanted it that way."

This same conversation was testified to by the witness Mrs. Cornwall.

These declarations have been set forth in full, in order that their full force and effect may be considered, as it is urged by the contestant that they are not only competent, but sufficient, to show that fraud or deception was practiced upon the testatrix, and that she did not wish or intend to exclude the contestant from participation in the distribution of her estate.   It has been held that, where the probate of a will is contested on the grounds of fraud, duress, imposition, or other like cause not drawing into question the testator's mental capacity at the time of its execution, neither his prior nor subsequent declarations are competent.   Waterman v. Whitney, 11 N. Y. 157.   In Jackson v. Kniffen, 2 Johns. 31, the plaintiff sought to maintain his claim as an heir at law and the defendant as a legatee under the will of David Kniffen.   Some very substantial evidence had been presented on behalf of the plaintiff, showing that the will had been obtained by duress, and the plaintiff sought to show the declarations of the testator to the effect that the will had been extorted from him by threats and duress.   The court held such evidence to be inadmissible.   Thompson, J., says:

"This will might have been executed under circumstances which ought to invalidate it, but to allow it to be impeached by the parol declarations of the testator himself would, in my judgment, be eluding the statute, and an infringement upon well-settled and established principles of law."

In Marx v. McGlynn, 88 N. Y. 374, the court says:

"Such declarations, whether made before or after the execution of a will, are competent as bearing upon the testator's mental capacity. They are also

competent as bearing upon the condition of the testator's mind with reference to the objects of his bounty. They may be given in evidence for the purpose of showing his relations to the people around him, and to the persons named in his will as beneficiaries. They are, however, entitled to no weight in proving external acts either of fraud or undue influence."

The same principle is recognized in Sanford v. Ellithorp, 95 N. Y. 54. Also in Re Clark, 40 Hun, 238. In Stevens v. Vancleve, 4 Wash. C. C. 262, Fed. Cas. No. 13,412, where the same question was under consideration, Washington, J., says:

"The declarations of a party to a deed or will, whether prior or subsequent to the execution, are nothing more than hearsay evidence; and nothing could be more dangerous than the admission of it either to control the construction of the instrument or to support or destroy its validity."

The same rule is recognized in Connecticut (Comstock v. Hadlyme Ecclesiastical Soc., 8 Conn. 254), and in Pennsylvania (Moritz v. Brough, 16 Serg. & R. 403), as well as in England (Provis v. Reed, 5 Bing. 435). While none of the authorities have any application to a case of alleged mental incapacity, they have a direct and important bearing upon the case at bar, because, as already stated, the testatrix possessed undoubted testamentary capacity at the time of the making of the will, and the only question involved is as to whether or not this will was procured by fraud or deception practiced upon the testatrix as to its contents. It is true that proof of these declarations was received without objection, but that fact does not obviate the necessity of determining their importance and probative force by the well-defined rules of evidence. But, if it were permissible to treat these declarations as entirely competent evidence upon the question at issue, the inference of deception, or of ignorance of the contents of the will on the part of the testatrix, which might otherwise spring therefrom, is entirely overcome by the proof of the facts and circumstances attending the execution of the will. An attorney of well-known integrity and extensive experience was sent for by the testatrix to draw the will. He went to her residence, and to her room, and was alone with her in consultation for some considerable time. The will was prepared, and the other attesting witness called in. The testatrix seated herself at the table where the will was, and signed it, at the same time saying that the bunch on her nose interfered with her seeing the line, and, as testified by the attorney:

"After she signed it, she said: 'There! I have got my will made, and I want you, Bill [Gilmore, the attesting witness], and you, Mr. Laning, to sign it as witnesses.' Then I said to her: 'Mrs. Metcalf, you declare this to be your last will and testament, hereby revoking all former wills by you made, and request myself and Mr. Gilmore to sign it as witnesses?' She said, 'Yes.' After that I signed it as a witness, and Mr. Gilmore signed it as a witness."

There is no direct proof that the will was read to testatrix after it was drawn. But where a testator is able to read writing, and is of sufficient capacity to transact business, it may be inferred from the circumstances that the testator was acquainted with its contents. Nexsen v. Nexsen, 3 Abb. Dec. 360; In re Smith, 95 N. Y. 516. No opportunity was offered to any one to deceive the testatrix as to the contents of the will except Mr. Laning, and it would

be an unwarranted inference that he, having no interest in the transaction aside from conscientiously performing his duty as scrivener, exercised any deception in procuring the execution of the will. A decree will be entered admitting the will to probate and dismissing the objections filed by the contestant.

Ordered accordingly.